UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

VIOLET ELIZABETH GRAYSON,

Plaintiff,

v. 15 Civ. 8740 (ER)

RESSLER & RESSLER; ELLEN WERTHER; BRUCE RESSLER; TRADEWINDS HOLDINGS, INC.; COREOLIS HOLDINGS, INC.; RICHARD RESSLER; and ORCHARD CAPITAL CORPORATION,

Defendants.

------------------------------x

New York, N.Y.
November 30, 2016
11:10 a.m.

Before:

HON. EDGARDO RAMOS,

District Judge

APPEARANCES

VIOLET ELIZABETH GRAYSON, Plaintiff Pro Se

RESSLER & RESSLER
Attorneys for Defendants
BY: BRUCE J. RESSLER

(Case called)

MS. GRAYSON: Violet Elizabeth Grayson.

MR. RESSLER: Bruce Ressler for all defendants.

THE COURT: Good morning to you both. This matter is on for a premotion conference, I believe at the request of the defendants for leave to file the Rule 11 motion.

MR. RESSLER: My understanding, Judge, that's what we discussed the last time. And we gave the plaintiff a certain amount of time to make her decision and she didn't withdraw the complaint, so we filed the motion. And the 21 days passed and that's why we took that action.

MS. GRAYSON: I would agree that the motion is procedurally correct and that the Court authorized it.

THE COURT: I received Ms. Grayson's most recent letter. And after a brief review of the law it appears that she is correct that typically Rule 11 motions, when addressed to the adequacy of the complaint, are deferred until there is some substantive evaluation of the allegations. The thought being, at least in part, one thought being that a party ought not to get around the requirement of establishing that there is no basis for a complaint by virtue of bringing a Rule 11 motion in lieu of a 12(b)(6) motion. And, accordingly, it would be my inclination to defer resolution of the Rule 11 motion until some later point in time.

Mr. Ressler.

MR. RESSLER: Your Honor, the case that she cited in some situations makes sense for the reasons that you just stated on the record. However, there is also the line of cases where you, as a threshold issue, can see that there is a nonfrivolous basis to make the Rule 11 motion and, therefore, another reason for this rule is to avoid unnecessary effort and wasting the time of the Court and the parties and this is that type of situation.

Some of the things that support that point of view are the fact that there is feign jurisdiction here.

THE COURT: There is what?

MR. RESSLER: Feign jurisdiction. And the other issue is, there can be no discovery, and Ms. Grayson is well aware of that. At the Court's instruction, I have contacted Mr. Mayer, who is the attorney for the trustee. He is well aware of the ruling by Judge Cristol that he and the professionals retained by the trustee cannot participate in discovery pending the litigation in North Carolina. And I won't speak for Mr. Mayer, but I will be surprised if he knowingly violated the rule of Judge Cristol.

So this case is not viable and there is no reason to go any further than considering the Rule 11 motion because it shouldn't be here. There is no jurisdiction. And even if there were jurisdiction, you can't conduct discovery.

This is essentially a fee dispute that should be

entertained in the bankruptcy court and that is the reason that we originally, when Ms. Grayson had sued me and my colleagues, as well as the professionals for the trustee, the reason we removed it to this court. It was our intention to have the whole thing moved down to Florida where it would be before the judge who is handling the bankruptcy matter. However, very properly, the judge in Florida suggested that he would take certain action if Ms. Grayson did not withdraw her claims against the trustee's professionals. She did. So that left us in this court without any of the trustees' professionals. However, we are still in a situation where the defendants that remain did not provide any financial information, as indicated by the declaration of Mr. Mayer. So there is no jurisdiction.

No. 2, you can't obtain discovery if there is no -- this is one of those cases that falls into the category of Rule 11 motions that should be nipped in the bud because this is a frivolous action that is a waste of time. This proceeding is nothing more than an effort to circumvent the rulings of the bankruptcy court in Florida and should not be permitted to proceed.

THE COURT: You keep saying there is no jurisdiction. Why not make a 12(b)(1) motion?

MR. RESSLER: We are happy to do that. But we had discussed that last time and we just thought that the Rule 11 should go first. But there is a very good argument to be made

that the Rule 11 motion could be expanded to dismiss and that might solve all the problems.

THE COURT: Is it your view that this case, that the entirety of discovery in this case would require the participation of the trustee and his professionals?

MR. RESSLER: Absolutely. If I understand the plaintiff's claims, the defendants allegedly provided Mr. Mayer with confidential financial information about Ms. Grayson, and we systematically defamed her in regard to her legal abilities to Mr. Mayer and that forced him or convinced him to terminate her services. This is completely untrue. And we have produced the affidavit from Mr. Mayer indicating that.

For him, obviously, if there were a claim involving that, obviously he would have to be deposed. That can't be done. And not because he would violate the order of this Court, but he is subject to the order of the Florida court and he would not provide that discovery. She knows that.

Ms. Grayson argued last time, well, Judge, you know, a lot of time has passed, things have changed, Mr. Mayer produced this declaration. Therefore, he should be deposed here. No. It is quite clear that the bankruptcy proceeding has prohibited him as well as her. She will be sanctioned by Judge Cristol and she knows it. What she is trying to do is to get under the cover and protection of this Court to do what Judge Cristol said she can't do. It is improper. It is a misuse of the

legal system by attorneys who know better. It should not be done. It should not be permitted. And there is no prejudice to Ms. Grayson.

Every claim that she has can be presented upon the completion of the underlying litigation in North Carolina. She knows that. Any fees that she thinks she is entitled to, and it's our position she is entitled to nothing, certainly nothing from the defendants in this case. All of those claims are preserved by Judge Cristol. There is no prejudice to her at all. If she doesn't like Judge Cristol, she can come back to this court. She can go across the street to the Supreme Court. There is no prejudice to her.

What she is attempting to do is to frustrate the order of the Florida bankruptcy court. It's unfortunate that any attorney attempts to do that and they certainly shouldn't do that under the guise of seeking the protection of another court.

THE COURT: What's the status of the action in Florida?

MR. RESSLER: That's a bankruptcy proceeding and that is basically the only asset that would come into that estate would be the proceeds from the North Carolina action.

THE COURT: Is that stayed pending --

MR. RESSLER: I wouldn't say stayed. It's open. It remains open. And we are awaiting decisions in the North

Carolina court. The status of the North Carolina court is there are certain motion practice down there which, if I had a crystal ball I could tell you when that would be decided. But I'm assuming in the next -- certainly by the beginning of the new year should be decided. And if we are successful in the pending motion practice, we will litigate the matter in state court in North Carolina. If we are not successful, we will litigate the matter in the federal court in the Central District of North Carolina. That's what we are waiting for.

If after we find out which court we are going to proceed in in North Carolina we will, if we are fortunate enough to be successful in that case, we expect there to be a significant recovery. Part of that will go to my clients and part of that will go to the Tradewinds plaintiffs in that proceeding and that will put significant assets into the bankruptcy estate, and I'm sure that Ms. Grayson will be in the bankruptcy court at that time.

MS. GRAYSON: Yes, your Honor. First of all, I think that the defendants here are trying to have it both ways. On the one hand, they really want to insert Mr. Mayer into this matter as a witness. They have a declaration. They want to use that to get my case dismissed and get sanctioned.

The last time we were here they offered to produce Mr. Mayer on the telephone. I don't know if they thought they were going to get him on the phone in open court or, worse

still otherwise, they want to insert him here as a witness, have the Court take action against me based on his declarations, which, as he can discuss in a moment, are actually pretty cagey and then say that I can't depose the man or get his papers.

I have a few responses. There are other people from whom to take document discovery. There are other people from whom to take depositions. Judge Cristol does not seem to be of the view that I should not have discovery document from the trustee's counsel. In fact, he previously ordered them to produce basically everything pertinent to my dismissal. Those were pretty much the words.

THE COURT: Didn't he also order that those papers not be used in any court for any matter whatsoever?

MS. GRAYSON: Yeah. That's absolutely true.

THE COURT: How can you come in here and say that the judge said you could use document discovery when there was a specific order that you can't use it for any purpose in any court?

MS. GRAYSON: I am not going to use it. In fact, it wasn't even being properly produced to me. I think what I would like to do is go back to Judge Cristol and ask for some guidance. That is my inclination. I don't think he envisioned this situation. I think he probably would not have issued an order denying the defendant's motion to apply the *Barton*

doctrine to them and allowing me to go forward in New York, and then with the notion I wouldn't get any discovery. That doesn't make sense to me.

I think he's a very fair-minded judge, and I would be of a mind to go back there and present the situation, see what he has to say. I think I could make a motion for clarification. I don't know exactly how to style it. I think it would be helpful, instead of being in the situation where Judge Cristol never envisioned this situation and kind of a stray dicta remark that was made in denying -- I forget if it was the original motion or the reconsideration motion considering the *Barton* doctrine is now being used as a basis for dismissing the lawsuit which Judge Cristol repeatedly authorized me to continue with.

THE COURT: I'm sorry. You keep ascribing to Judge Cristol things that I didn't read in the order. He didn't authorize you. He said that you can't sue the trustee and his professionals. But he said that your suit against the Ressler firm and others at the Coreolis group did not buy the *Barton* doctrine.

MS. GRAYSON: That's right, and therefore could go forward. He could have said it violates the *Barton* doctrine, it can't go forward. But he didn't say that. At some point I believe it was in his denying the motion for reconsideration. He said, obviously, she is not going to depose the trustee's

professionals.

I think there are a couple of things to be considered. I think that doesn't mean that I can't get discovery necessarily from them or from anybody else. I think that needs to be visited. When I was told not to disclose the materials they were first ordered to give to me, it was in a different procedural context. I think we would want to see what the judge thought about it in the current procedural context.

Let's assume, in arguendo, let's say that I'm not allowed to depose Robert Mayer, either because this Court thought it was wrong or somehow Judge Cristol's order was binding or for whatever reason it might be. At that point we would wind up with a group of evidentiary questions. For example, whether his contemporaneous -- I certainly don't think we can have his testimony in and I don't get to depose him. That to me seems like a due process violation. I really can't imagine that scenario.

Let's say they can't bring -- that he decides that he -- he might have waived any rights he had by inserting himself this way. But let's assume there was no waiver. If there was no waiver and then the Court ruled that he couldn't testify or give any evidence in this matter, then the ordinary rules of evidence pertaining to things like -- it might be what he told me contemporaneously would come in because he was unavailable as a witness due to that order. I don't think that

I would be dead in the water, even if I couldn't depose him.

And I think whether I can depose him or not, there are a lot of ways to look at it. I don't think we are here now. And I don't think necessarily what we get with deposition -- it's possible that it would be one way with depositions, another way with documents. It's possible that document discovery from these parties would produce some of what I'm looking for. There are also a bunch of third parties who I think were copied on a lot of things and I might be able to get it that way.

I understand what they are saying, but I think it needs to be resolved and sorted out, and I don't think it's a reason to throw out my case or sanction me.

MR. RESSLER: Your Honor, it's important to keep in mind that this attempt to obtain discovery from the trustee, from me and others involved in the litigation in North Carolina, is all in service of Ms. Grayson's attempt to extract fees from the estate or from anybody else that will pay her, and the idea being that we have ongoing litigation, which I can assure the Court is hotly contested, in North Carolina. And that my client, as well as Mr. Mayer's client, fears the revelation of our trial strategy and our litigation strategy in North Carolina.

And when we made that argument to Judge Cristol, he understood it and that is why he put the stay of discovery as

to the professionals.

He recognized that the *Barton* doctrine -- we argued that the *Barton* doctrine should be wider. He said no. He said it only applies on its face to the professionals hired by the trustee, and we are not hired by the trustee, meaning Ressler & Ressler. In that sense he was correct.

But he was quite clear that Ms. Grayson could not take discovery from Mr. Mayer, from Mr. Mukamal, from Susman Godfrey, from the attorneys that they had now, Bailey & Glasser. They have local North Carolina counsel.

None of these people can be deposed. None of these people can have documents produced because of the obvious risk of prejudice to the litigation in North Carolina. And that was the purpose for Judge Cristol's stay from his court. It is vitally important to the Tradewinds plaintiffs in that litigation. It's also important to my clients, obviously, because we are joined at the hip in this litigation.

And once Ms. Grayson was frustrated in her attempt to obtain discovery in the Florida courts, she has now come up here to make the same effort, the idea being, that if she threatens us with disclosure, she will extract fees. And I must say, I have to admit, she has been successful to an extent because during the litigation in Florida, in the bankruptcy court there, Judge Cristol suggested to Tradewinds that they go to a mediation and try to settle her claims. And they went and

they paid her $90,000. It's not the 20 million that she was hoping for, but it was money.

Once that paid off for her, she became very aggressive in trying to continue her litigation strategy of threatening to reveal our litigation strategy in North Carolina. This is what this whole thing is about. She knows she is not going to get any money from us. She knows we didn't say the things that she said. She knows we didn't reveal any financial information. We didn't have any financial information.

But in the course of discovery if she can convince, especially Mr. Mayer, that this will hurt his case in North Carolina, she has the right to make a further application for fees and the trade would be, you want me to go away, pay me more. Give me a percentage of whatever you win. Pay me more fees now. This litigation by extortion is reprehensible by itself. But the purpose was clearly recognized by Judge Cristol and that's why he stayed discovery.

MS. GRAYSON: Judge Cristol didn't stay discovery. What he said was that when he was denying *Barton* protection to the parties who are now before this court that it was obvious that I would not depose the trustee and his counsel. That's what he said. And that issue had actually never been briefed. It was just something he tossed off. He never heard from the parties on it.

All this business about how he said that because of

the North Carolina action, at the time he issued that ruling, which I believe was 11 months ago, there was no litigation in North Carolina, and he had no reason to believe that there would be litigation in North Carolina. So that has nothing to do with it.

As the fee app, that's probably enough. I can go on. There are a lot of factual matters addressed which tend to make me feel more than anything else, but there are factual matters that need to be tried.

THE COURT: Let me ask Mr. Ressler. According to some of the case law I reviewed briefly -- I guess what you want by way of sanctions is dismissal of the complaint.

MR. RESSLER: Yes.

THE COURT: But a Rule 11 sanction is not a ruling on the merits.

MR. RESSLER: Understood.

THE COURT: What happens?

MR. RESSLER: There are various types of sanctions that the Court could impose, financial sanctions, prescriptions on conduct by Ms. Grayson. And that's what we would really seek in this action. If there is a financial sanction, I think the message would be delivered to Ms. Grayson and she would understand which way the wind is blowing. If there were prohibitions on her from going to court to court filing frivolous actions based upon the matters before the Court here,

that's something this Court could do.

And picking up on what you said before, I imagine Ms. Grayson at some point will want to oppose this Rule 11 motion. And what I'm thinking now is perhaps we could then put in our reply and cross move to dismiss and have both of those motions before the Court, and that might make it easier for the issue to be resolved completely.

THE COURT: What is the basis for the motion to dismiss, the jurisdictional argument?

MR. RESSLER: In fishing around for some way to get to this court, Ms. Grayson alleged that there was a violation of a federal statute where we revealed certain financial information, confidential financial information, to Mr. Mayer. This is untrue. We never obtained it. We never revealed it. Didn't know anything about it. If we didn't do it, if there was no good-faith basis for her to make that allegation, this is feign jurisdiction. The complaint must be dismissed.

The reason that we seek a prohibition upon her going to another court and doing the same thing is, she would have the right to what she did before. She could skate across the street to Supreme Court and file the same action. Wouldn't have to be on the basis of that federal statute, obviously. But she has other claims. And those claims would have a jurisdictional basis in New York Supreme, but they are equally frivolous.

What we are asking is for this Court to say to her, now that she has come to this court and basically submitted to the jurisdiction of this court for the purposes of this proceeding, this Court has the power to say, look, this is frivolous, don't do this anymore. Don't go to this court or any other court with this frivolous argument. You can go to court for any other claim you want. That's your right as an American, but not this. But the Court might say, look, she has no jurisdiction in my court, so I'm throwing her out of here. If she wants to go to someplace else, I am not going that far. You have to seek that relief from another judge if she goes to another court.

THE COURT: I still don't understand what would happen to the case in that event.

MR. RESSLER: If the jurisdictional basis of the case in this court was recognized for not being there, then this case would have to be dismissed. She would still have claims, but she couldn't base it -- she couldn't be in this court on those claims.

THE COURT: Ms. Grayson.

MS. GRAYSON: Just to summarize, what they want to have is basically a summary judgment motion with no discovery, they want to use the Rule 11 motion as a basis to get a dismissal with prejudice, and they want me to have to defend every claim, both the one that is the federal question claim

without getting any document discovery or any discovery with description, and they want us to pull like a rabbit out of a hat, magical thinking, that if these claims were dismissed on jurisdictional basis, instead of the Court deciding to exercise supplemental jurisdiction or whether to dismiss without prejudice so I could go across the street, they would like the entire thing to be dismissed with prejudice without me getting any discovery. I think that's an apt summary and I don't think there is a legal basis for doing that.

MR. RESSLER: I agree with her summary, except it's not a summary judgment motion. It's a motion to dismiss. Because even assuming the things she says in the complaint are true in terms of for jurisdictional basis, if we can show, and there is case law to support that, if it's a frivolous basis, feign jurisdiction, you don't need discovery to do that. If she said, I gave this guy that and this guy says I never got that, they never told me that, unless she has some good-faith basis to contradict what he is saying, the case has to be dismissed.

THE COURT: What would be put before me to make that determination?

MR. RESSLER: The declaration of Mr. Mayer.

MS. GRAYSON: Who I am not allowed to depose.

MR. RESSLER: The restriction on his deposition is anything to do with the retention by the trustee or any of

those proceedings. There is no restriction on him in saying just what he said in the declaration. Ressler and his colleagues never gave me any financial information about Ms. Grayson and they never defamed her in the meeting that she is talking about or any other time. Those two points by itself, unless those are shown to be untrue, are sufficient to destroy jurisdiction in this court.

Now, Ms. Grayson is saying, well, I want to depose Mr. Mayer. She can't depose him on what she wants, which is the strategy in North Carolina. She could send him -- I don't want to suggest how she can do it, but she could obtain some confirmation or verification of the two points that we are talking about, which is a very limited question here. Is there jurisdiction in this court? If there is, we are off to the races and we have to make a motion to dismiss.

THE COURT: Shouldn't I allow her the ability to do that? Seems to me that I can't just accept the affidavit of Mr. Mayer.

MR. RESSLER: Your Honor, this is an adversary proceeding, so I don't want to say more than I should. However, if I were in her shoes, I might send some interrogatories to Mr. Mayer and I might ask him about his declaration and if he's lying or he's telling the truth.

Mr. Mayer, of course the wise fellow that he is, I'm sure would seek the clarification of the bankruptcy court and

would answer those limited questions. If he said no, my declaration is made up by Ressler, I never signed it or I didn't mean to say it, that's a different story. We are off to the races.

But if he again confirms under oath that that is the state of affairs, on what basis is she making the comment in her complaint that we did it if the only guy there, aside from the defendants, says we didn't do it. If there is no document that shows otherwise, even a redacted document that shows otherwise, if there is no statement that he makes that shows otherwise, there is no jurisdiction.

And then that points out to something much more serious. Litigators sometimes fail to prove what they hope to prove in a case. That's the way it goes and I've been there a few times myself. However, no lawyer should come into court knowing that he's not telling the truth and get away with it and that's what we have here.

In this motion, if she wants to seek some limited discovery of Mr. Mayer to confirm or refute that declaration, I think she is entitled to do that. But if she fails to do that, I think that supports our Rule 11 motion and she should be appropriately sanctioned. If I come into court and I'm lying to you, if I did say those things about her and I did get that information, I should be subject to the sanctions of this court. But what's good for me is also good for her.

Somebody here is not telling the truth. It could be that I'm lying and that Mr. Mayer is lying and Ms. Werther are lying, and we should face the consequences for lying. But if she is lying, she should face the consequences now and that's why the Rule 11 motion is pending. If the Court would feel more comfortable with us cross moving for, in addition, a motion to dismiss, we are happy to do that.

THE COURT: I think we should do that. I think that the parties need to think about what limited discovery would look like.

Ms. Grayson.

MS. GRAYSON: I do object to the notion of limited discovery because it's been suggested that I should take interrogatories --

THE COURT: I just said, we should think about what that limited discovery should look like.

MS. GRAYSON: I'm thinking that it wouldn't be very limited.

THE COURT: It would be limited.

MS. GRAYSON: My concern is that I would want to get documents from third parties. I would want to get all the perspective on all of this.

THE COURT: Let's think about what that limited discovery would look like because what we are talking about, as I understand it, is, is there jurisdiction before me based on

the federal statute that prohibits the disclosure of financial information.

MS. GRAYSON: That's true.

THE COURT: If we have discovery limited to whether or not the Ressler firm obtained that financial information and give it to an individual, then I think we can go forward on that basis.

MR. RESSLER: I agree, your Honor.

THE COURT: Why don't you make your motion. Have you not responded to the Rule 11 motion?

MS. GRAYSON: No, I haven't.

THE COURT: Why don't you make the motion. And you can respond to both at the same time.

MS. GRAYSON: The Rule 11 motion is filed. Let me get this clear. Is the Court saying that the Rule 11 motion will be adjudicated now and that they are allowed to bring a Rule 12(f) motion.

THE COURT: It would be a 12(b)(1) motion.

MS. GRAYSON: 12(b)(1) motion as opposed to a 12(b)(6) motion. It would just be directed to the jurisdictional issue.

THE COURT: Correct.

MS. GRAYSON: Thereafter I would get some discovery pertinent to jurisdiction.

THE COURT: Yes.

MR. RESSLER: Your Honor, in an effort to expedite

things, because, in the opinion of the defendants, this is a frivolous action that is wasting the time of the Court and all involved, what I would request is that Ms. Grayson this month put in some opposition to the Rule 11 because that's a separate issue from the jurisdictional issues and then we will, in response to that, cross-move to dismiss.

In the course of putting together her papers on the Rule 11, we can confer or she can decide on her own what type of discovery she wants from Mayer or anybody else that would not aggravate Judge Cristol and violate his orders. I thought about this a lot, this limited discovery.

Personally, I believe that the affidavit from Mr. Mayer is conclusive, but I can understand how a Court is going to say, I need a little bit more. And I don't think it would violate the order of Judge Cristol to have limited discovery on the issues raised in the declaration, and I think it should be done now.

When Ms. Grayson puts in her opposition to the Rule 11 motion, she will also have in hand hopefully a response from Mr. Mayer because I'm sure he will respond quite quickly. And she will be able to say, look, Judge, I'm opposing Rule 11 because Mayer has given me some discovery that shows I am telling the truth and Mr. Ressler and his clients are lying. That speaks to the Rule 11 motion.

If such discovery exists, I am not going to make a

motion to dismiss because I'd be lying to the Court if the case did proceed. But if I think what will happen is that she has no discovery that proves anything that she is saying, then I will, as the Court directed, cross-move at that time, probably in January, to dismiss. And then both those motions can be considered together with whatever limited discovery Ms. Grayson seeks and we will get this thing over with.

MS. GRAYSON: This seems terribly complex to me, but I would like to suggest an alternative.

THE COURT: Sure.

MS. GRAYSON: I would like to suggest that we have a Rule 11 motion as to whether I brought the case without sufficient basis and sufficient investigation. It's a simple motion, I think. And if the Court doesn't want to leave it until the very end of the case, let's do it now. We will set a date in January. It will be heard.

In the meantime, I can get the Rule 12(b)(1) motion pertaining to jurisdiction. And at that time I'll take a look at what discovery I would need to respond to it.

THE COURT: I think that's what Mr. Ressler --

MS. GRAYSON: I thought I was hearing something quite different, that it was all going to be heard together.

MR. RESSLER: You would have the time. What I'm saying is, this month -- I agree with you, the Rule 11 motion is pending. It needs to be responded to. You would respond

this month, however much time you want. And then it's subject to the Court's approval.

At the same time, you would seek whatever discovery you want from Mr. Mayer and that would be in anticipation of my motion to dismiss and also to support the Rule 11. If somebody is not being accurate in the allegations to the Court, this discovery will confirm it one way or the other. That is obviously closely related to the Rule 11 motion and also going to be related to the motion to dismiss. But it should be obtained now because the Rule 11 motion doesn't make any sense without it. You can't tell.

MS. GRAYSON: I disagree completely. The Rule 11 motion is addressed to whether when I brought this I had a legitimate basis for it. It's been filed and I should be allowed a chance to respond to it unless we are going to go to the end of the case and then I am going to have full discovery.

THE COURT: Isn't it all the same?

MS. GRAYSON: The Rule 11 motion.

THE COURT: The Rule 11 motion, as I understand it.

MS. GRAYSON: Much broader.

THE COURT: There is a lot more to it. But my concern now is with the jurisdictional issue. And the jurisdictional issue and the Rule 11 motion are completely aligned, which is to say that if they did not obtain financial information, confidential financial information that belonged to you and

give it to Mr. Mayer, there is no jurisdiction. Also, if it is true that they did not obtain that financial information and give it to Mr. Mayer, then there was no basis for you to bring the complaint and you violated Rule 11.

MS. GRAYSON: I would disagree with that. I was told by Mr. Mayer that they did contemporaneously. The first thing that happened, this was on the date -- I guess it was the 15th of August of 2013. I was having a conference with him in the morning, privately. The Resslers were not present. He told me -- he had been sort of quite complimentary in various ways about the representation that I provided to Tradewinds. And then he said, you are going to be embarrassed by this, but I am going to tell you that I pulled your credit information.

THE COURT: That he did.

MS. GRAYSON: Yes. That was the first conversation and I don't know what I said because I was still hoping I wouldn't get fired. In any event, I was there. And then he had a meeting that afternoon with Mr. Ressler and his wife, Ms. Werther, who is also an attorney, and I had wished to attend that meeting and Mr. Mayer had want me to attend that meeting. And they had said that they would not meet with Mr. Mayer unless I was absent. I had to be excluded from that meeting.

I walked over to their officers with Mr. Mayer. He was very friendly, and he promised he would contact me later

that today after the meeting. In fact, he flew back to Georgia and called me very late. He also told me -- he told me at that time that they wanted me gone and that they had also pulled some kind of credit information about me and that they -- that's it, those two things. They provided him with negative credit information about me and that they wanted me gone. And a few other things. But they said both of those things, certainly.

THE COURT: You can't sue Mr. Mayer.

MS. GRAYSON: No. It seems that I can't.

THE COURT: At least not yet.

MS. GRAYSON: I don't know if I ever can.

MR. RESSLER: Can't because of the settlement that she made.

THE COURT: I don't know whether what you just described, whether Mr. Ressler or his firm obtained any financial information from you, is sufficient to trigger a violation of the statute. As I sit here, I don't know.

MS. GRAYSON: It depends on what they got -- depends on a few things. Since I have not seen it, conceivably, it won't fall within the statute, but I think there is enough there that I was told that he pulled my credit report and they did likewise.

THE COURT: If that's the case, if those are the facts, we don't need Mayer at all. You can just put

Mr. Ressler on the stand or Ms. Werther on the stand.

MS. GRAYSON: Might be contradicted.

In any event, there is one more thing I would like to mention. I would like to get the documents that are in Mr. Mayer's file and see what the documents look like, what documents he was provided at that meeting. I think that's pertinent. I don't just need swearing. I need to see what the documents are.

THE COURT: You want to see your financial information in his file.

MS. GRAYSON: Yeah. And I want to see notes of that meeting as it pertains to this.

THE COURT: We don't need to get into discovery disputes now.

MS. GRAYSON: Let me say one more thing because I don't want the Court to feel sandbagged. In the event that let's say that I get all the documents out of these files and maybe I find some financial information but maybe it's not the kind of credit report that's covered by the federal law or various things could happen, let's say that I can't prove the violation of that particular law, but I, of course, have this world of state torts, which are much more complicated. I have lots and lots of state tort allegations, including defamation.

At that point I would have the option of releasing the California defendants and then would have diversity. That's

probably what I would do under those circumstances. I don't want the Court to be astonished if I don't find the credit information that I'm looking for in that file.

MR. RESSLER: Your Honor, just so there is no misunderstanding, no one, none of the defendants in this case ever pulled any credit reports or any financial information of any kind about Ms. Grayson. We don't have any such information from the beginning of the first day I ever met her until today. Mayer never told her that we pulled credit information because we didn't, and he has made it pretty clear I think in his declaration.

THE COURT: Does his declaration say --

MR. RESSLER: Ressler never gave me any financial information about Grayson, nothing, zippo, nothing. Not a little bit, not nonactionable financial information.

THE COURT: How long is this declaration?

MR. RESSLER: Very short.

MS. GRAYSON: It's less than three pages.

THE COURT: Can I see it.

MS. GRAYSON: Of course. It has my work product on it. I don't care.

THE COURT: If you're OK with me looking at it. I won't share it with Mr. Ressler.

MR. RESSLER: I've seen it.

MS. GRAYSON: Look at the end, your Honor.

THE COURT: That's what I thought because the factual premise that Ms. Grayson just described is very, very different from what I have understood this case to be about.

MR. RESSLER: Your Honor, I'm not trying to impugn the motives of anybody in this litigation. But there is simply no basis, not a scintilla of evidence to support anything that she said. And to take up the time of this Court and the parties is just unconscionable and everyone else waiting. It's just unconscionable.

THE COURT: Let me do this. Let's do this by the rules. We have the Rule 11 motion pending. Why don't you respond within a month.

MS. GRAYSON: Sure. I was hoping that I would be able to get a hearing very early in the month of January. That's much better for me than later. Is that possible?

MR. RESSLER: Your Honor, we are going to be away and I would not be available until any time after January 10 except for January 18, as I indicated in my letter to the Court.

MS. GRAYSON: I think I could do the 11th.

MR. RESSLER: Any other time, February, whatever.

THE COURT: I don't think that ultimately, based on the record that we will have, that I will be able -- I'll hear argument, I suppose, but I don't know that I'll be able to determine the motion at that time.

MR. RESSLER: That's fine. I'm talking about oral

argument. The decision comes when the decision comes.

MS. GRAYSON: If it's not going to be decided, is there any point briefing and arguing it?

THE COURT: I don't know that I am going to need oral argument. I typically don't have oral argument.

MR. RESSLER: Defendants do not need oral argument on this case. We would like to get our papers in some time during the month of January, not before January 10. I think we would shortly thereafter make the motion to dismiss if what I think is going to happen in this case happened, and we will go from there.

THE COURT: Why can't you make the motion to dismiss now?

MR. RESSLER: Because I want her to do that discovery. I want her to get some response from Mayer saying to her, look, I'm telling the truth and what you are saying is nonsense. And once he says that -- he said it already once, but if the Court wants him to say it again, I want that before I make my motion to dismiss because that will be the end of it.

MS. GRAYSON: I think I ought to see the motion so I know exactly what the discovery is and the scope of allegations are. I have a general notion.

THE COURT: I think it's clear what the scope is.

MS. GRAYSON: I could start discovery and do it over the next few months without the motion pending. I guess that's

OK, too.

THE COURT: If you are going to consent to taking limited discovery, then you can go ahead and do it.

MS. GRAYSON: The question is what it's going to be. It's going to be complicated because what makes it complicated, and I think I might prefer to have the rule -- I might prefer to have an order and have the motion filed, the Rule 12(b)(1) motion filed, because Judge Cristol is going to say, what's this about and what are the limitations.

THE COURT: It's really not that complicated, Ms. Grayson. Either they took your information and shared it or they didn't. That's all this is.

MS. GRAYSON: I appreciate that. I guess the question is, I should find out whether Judge Cristol is good with my looking into this.

THE COURT: Thirty days to respond to the Rule 11 motion. File your Rule 12(b)(1) motion within the same time.

MR. RESSLER: Within these 30 days.

THE COURT: Yes.

MR. RESSLER: Your Honor, could we do that in January?

THE COURT: Fine. January what?

MR. RESSLER: 15.

THE COURT: January 15.

MS. GRAYSON: Any particular time that I get for the discovery, or try to stipulate to it?

THE COURT: Let me look to the parties in the first instance. You discuss what that limited discovery is going to look like and if there is any disagreement, you can come back to me.

MS. GRAYSON: Sounds good. Thank you very much, your Honor.

THE COURT: You are going to respond to the motion by January 15, the Rule 11 motion.

MS. GRAYSON: Sure. No problem at all. Thank you. Sorry to have taken up so much of your time, your Honor.

MR. RESSLER: What day of the week is the 15th?

THE DEPUTY CLERK: It's actually a Sunday. The 16th is the Monday.

MR. RESSLER: 16th.

THE COURT: Yes.

MS. GRAYSON: I guess that's for both of us.

THE COURT: OK folks.

o0o