UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ELIZABETH GRAYSON,

Plaintiff,

v. 15 CV 8740 (ER)

RESSLER & RESSLER and ELLEN WERTHER,

Defendants.

------------------------------x

New York, N.Y.
February 16, 2017
2:30 p.m.

Before:

HON. EDGARDO RAMOS,

District Judge

APPEARANCES

VIOLET GRAYSON, ESQ.
Plaintiff pro se for Plaintiff

RESSLER & RESSLER
Defendant pro se for Defendant
BRUCE RESSLER, ESQ.
ELLER R. WERTHER, ESQ.

(Case called)

(In open court)

THE DEPUTY CLERK: In the matter of Grayson v. Ressler & Ressler. Please state your names for the record.

MS. GRAYSON: Violet Elizabeth Grayson, pro per persona.

MR. RESSLER: Bruce Ressler, pro se, for the co-defendants.

MS. WERTHER: Ellen Werther, pro se, for the co-defendants.

THE COURT: Good afternoon to you all. I decided to bring you in after I received a flurry of letters. So you know, for future reference, when I start to receive a flurry of letters, I stop reading. Because at a certain point it just doesn't make sense to try to figure out what's going on. And I thought it better to bring you all in, and I think the reason that we are all here was that Ms. Grayson went back to the United States Bankruptcy Court in the Southern District of Florida, Judge Cristol, to request a clarification of the order that I think we were all sort of operating under that she could not take discovery from the trustee. In an order dated January 30, 2017, Judge Cristol clarified that he did not intend to, and I'll quote now, "did not intend to control discovery in the New York action in any respect if that discovery is otherwise authorized by the New York judge." And

I think that's the starting off point.

And the question that I have for you all, and I'll begin with you, Ms. Grayson, is now that we have that clarification how do you believe we should proceed? You could remain seated. Just bring the microphone close to you.

MS. GRAYSON: My preference at this point would be to just go ahead with full discovery in the case. I know the last time we were here the Court suggested that we should -- not only suggested, first suggested, then ordered that we would take discovery only with respect to federal question jurisdiction. I find that somewhat inefficient. Furthermore, the letters that maybe the Court didn't read, the defendants are requesting all kinds of extraordinary relief against me based on the merits that --

THE COURT: Based on?

MS. GRAYSON: The merits; that the case should be dismissed with prejudice, that attorneys fees should be imposed. This is all pursuant to Rule 11. The original Rule 11 was based on this erroneous belief about what Judge Cristol ordered, but they still want to have a dismissal with prejudice, they want imposition of attorneys fees and they want me to be reported to the grievance committee. And I think if they want this Court to engage in a global judgment about my motives, the probity of my conduct, I should take discovery, complete discovery and the Court can look at the whole picture

of who did what to whom and reach a conclusion. That would be my preference.

THE COURT: Okay. Mr. Ressler or Ms. Werther?

MR. RESSLER: Your Honor, I think that under the circumstances we would like to proceed with the Rule 11 motion which is now actually pending before you, as well as a Rule 12(b)(1) and 12(b)(6) motion to dismiss. I think in light of Mr. Meyers' declaration as well as the trustee's termination statement I think there is ample evidence now before the Court to proceed with both motions and I believe that would go a long way towards resolving the issues in this court.

As to Ms. Grayson's request that she clear her name, I think this is not the proper venue for that. If there is something that she wants to clear about her name, that venue would be the grievance committee.

THE COURT: What about her request that discovery proceed?

MR. RESSLER: I think that it is completely unnecessary for the purposes of what is before the Court at this time. Before the Court at this time, obviously, is the Rule 11 motion, was this lawsuit commenced on an improper basis. I would submit that there is no basis in law and in fact for any of the claims and that's why I believe this Court held previously that there is a non-frivolous basis for us to proceed with that motion.

As to the motion to dismiss, which has also been previously discussed in this Court, obviously, for the 12(b)(6) no discovery is necessary because it is limited to the four corners of the complaint and there is ample evidence that that pleading is inadequate as a matter of law.

In regard to the 12(b)(1), it's a rather narrow issue which underlies jurisdiction in this Court; did we provide some improper financial information to the trustee or his professionals concerning Ms. Grayson. I think that there is limited discovery on that issue permitted. I think that we have seen Mr. Meyers' declaration, says it never happened. We have seen the trustee's termination statement, said it never happened, and lays out in great detail why Ms. Grayson was terminated and this is intolerable in any court.

THE COURT: Let me ask you, I have the statement, the termination statement. Can I use it?

MR. RESSLER: I believe you can.

THE COURT: Why?

MR. RESSLER: Because I think it subverts the basis of her lawsuit.

THE COURT: No, I understand that there may be information in there that is helpful to you, hurtful to her, but am I allowed to use it?

MR. RESSLER: Are you allowed to use it in terms of disseminating it to the world? In an abundance of caution I

did not file that and I asked you to make an in camera inspection of that document. I don't think it would prejudice the lawsuit that's now pending in North Carolina because she's no longer involved in the case.

THE COURT: But there was some fairly strong language that was used when it was issued, correct? Or when the Court issued, that it cannot be used for any purpose, any reason, never put on any public docket.

MR. RESSLER: Oh, absolutely. That's why until we had the motion on clarification from Judge Cristol I had never seen it before and I had no intention of using it and, frankly, I did not think he would clarify his prior order by saying there's no restriction on discovery in this Court. As soon as I saw that I contacted the trustee or the trustee's counsel and he sent me a copy of the statement.

I think it is, I think it is absolutely relevant. I think you can use it for the purposes of this lawsuit. I'm not asking you to make any determination as to whether she was terminated for cause or anything in this, of that nature. I think that has nothing to do with the case here. But in terms of her allegation that there is federal jurisdiction because of some improper dissemination of her financial information, that is untrue. It never happened. She has not presented any evidence anywhere that it did happen, and in fact, the people that would have received that purported information say it

didn't happen. And, you know, she's sort of changed her story a little bit. Now she says, well, if I have no jurisdiction here then I'm going to proceed on my other claims in the complaint. Now, I'll do that, she said, and I think this is from prior hearings before you, I can discontinue against the non-diverse defendants. It's interesting to note that she has filed claims against our clients in, or subsidiaries of our clients in the North Carolina litigation. She doesn't even know those people, she's never even spoken to those people other than to maybe say hello when she passed them in court. The idea that they have anything to do with her is absurd.

She said she has defamation claims. Mr. Meyer is quite clear no defamation statements or defamatory statements were made by any defendant in this lawsuit. She says she has legal malpractice claims. I think it's pretty clear that there was no attorney-client relationship between her and me or anybody in my law firm or any of my clients.

This is a case, this is a litigation by extortion, as I described it previously, in an attempt to get some type of settlement, which will never happen. It is also litigation in service of spite. She was fired by her clients and she's blaming everyone but herself. If you read the termination statement by the trustee, it's obvious why she was terminated. She was terminated, I would submit, for cause, but that's not an issue before this Court. Certainly she was not terminated

because we defamed her, because we committed some legal malpractice, because we revealed some improper financial information. These are wholly made up.

I have been -- in November I will be a member of the Bar for 40 years. In 40 years of litigation never asked a Court to make a referral to the grievance committee. Never saw a lawsuit like this. Been in lawsuits where I won, I lost, prove my case, didn't prove it so well, but nothing like this. This is an outrage in any court. And the reason we seek to move under 12(b)(6) and 12(b)(1), is we want this to go away because it is -- as a careful jurist you might say, well, if I grant your motion under 12(b)(1) I don't reach 12(b)(6). But then we are left with the situation where she can then refile. That might happen here.

What I would ask is under the circumstances of this case I think the Court, if it decides to entertain that motion to dismiss, I think there should be a determination on the grounds of 12(b)(1) and 12(b)(6). If this is a case that is based purely on baloney, then that should be clear. If she wants to clear her name aside from these legal proceedings, that's what the grievance committee has to afford her the right to do.

THE COURT: I guess on the 12(b)(1)/12(b)(6) issue --

MR. RESSLER: Yes.

THE COURT: If you make the motion I have to consider

the 12(b)(1) motion first and if I determine that there's no jurisdiction I put down my pen. So I can't give you, assuming that you're entitled to it, I can't give you all of the relief that you want.

MR. RESSLER: I cannot disagree with that. However, every Court has the inherent authority to make sure that a lawyer, a member of the Bar, doesn't come into the courtroom and use this venue for an improper purpose. We have a case here where, aside from the (b)(1) allegations about the dissemination of improper financial information, she's talking about a completely spurious legal malpractice claim. There was no attorney-client relationship and she's talking about a defamation claim where, the last time I checked when you have a defamation claim you have to have the defamatory language in the complaint. It's not there. Moreover, there was no defamatory comments according to Mr. Meyers' declaration and certainly nothing referred to in a 19-page statement from the trustee about Ms. Grayson's termination.

So there is an inherent power, I would argue, in every Court to move against and prevent misconduct by attorneys. This is misconduct. I'm not asking this Court to be a grievance committee. That's a different forum of a different purpose and Ms. Grayson has different rights in that forum. However, she cannot or should not be permitted to bring improper claims in this court or any court, and I think every

court has the responsibility to make that plain to all lawyers.

THE COURT: Ms. Grayson?

MS. GRAYSON: Thank you, your Honor. First of all -- I'm sorry. May I ask whether the Court has read the statement from the trustee?

THE COURT: I have not read it completely.

MS. GRAYSON: Okay. One thing I feel is if the Court looks at it, uses it for any purpose or is even possibly subconsciously influenced by it I should have the chance to impeach it through discovery. I should be afforded the opportunity to get document discovery and to depose the pertinent parties who would predominantly be the trustee, Barry Mukamal, and his counsel.

THE COURT: I'm sorry, the trustee who?

MS. GRAYSON: His name is Barry Mukamal. It's a Sephardic Jewish name.

THE COURT: Mukamal? How is that spelled?

MS. GRAYSON: M-u-k-a-m-a-l. Barry E. I think if the Court is going to use this for any purpose whatsoever I should have the right to attack it. I believe if I got document discovery and I had the opportunity to depose these parties the situation would look dramatically different.

I also want to focus on the issue of jurisdiction. The Court keeps coming back to that. The defendants don't want to just end with jurisdiction. They want to ruin me, take me

before the grievance committee, get a dismissal with prejudice, so on. I think we both know that's not the way it works and the real issue here is whether there's going to be federal jurisdiction and whether we're going to proceed. And as Mr. Ressler just reminded the Court, right now I've got federal question jurisdiction and I'm going to be really candid. I am up in the air about whether, I don't know whether I'm going to find the documents I want or the testimony I want if I take the limited jurisdiction. I might or I might not. I know that I do have the option of dismissing the non-diverse defendants and while the defendants are saying, oh, it was just terrible that she would have brought them and then released them. I tend to when I'm not sure who did what at whose orders to bring in all the parties because, you know, you could have the statute of limitations run, if it turns out the parties that were here did something at the behest of other parties and that could be harmful to me. So I brought them in for those reasons because those are the principals and these were the lawyers working for the principals. Robert Ressler is Bruce Ressler's brother.

On the other hand, if I release them, I believe the other parties would indemnify these parties and since the other parties were the direct actors, nothing terrible would come of my releasing them. And if the inclination would be, I thought about it a great deal, if it didn't pan out in discovery for the federal question jurisdiction I'd go ahead and file for

diversity jurisdiction, which I could do. I looked at the Second Circuit law, I could do that. There's no reason I can't do that at this point procedurally. And that's what I would do.

And I'll be very candid, I want to be absolutely candid with the Court. I don't want you to think I'm hiding the ball in any way. I do that for a number of reasons. One of them is I like national service of process, the way federal discovery works is better for me because things happened all over the country, I don't want to have to start little local actions in order to serve subpoenas in other places. It's better for me to have that and I always prefer to be, almost always prefer to be in federal court, depending on the judge, I feel I generally get a better judge with a lighter docket with the support of highly intelligent law clerks. So I'd rather stay and I think the Court will have jurisdiction one way or the other, so I don't think there's really any reason we shouldn't go ahead.

If they want to file any kind of Rule 12 motion, that's fine. I've been up in the air about whether I should amend the complaint to drop the other plaintiffs now and have two kinds of jurisdiction or whether I should wait and take the limited discovery and see whether that pans out or not. Maybe it's just more efficient to drop the defendants, have two kinds of federal jurisdiction alleged.

THE COURT: What two kinds of federal jurisdiction would there be?

MS. GRAYSON: There's federal question, there's diversity. Obviously, they don't deny a United States party.

THE COURT: I thought you were going to say that because you don't know whether you have federal question jurisdiction or because whether that's the basis for the 12(b)(1) motion that you sort of obviate the need to go through that motion practice, drop the non-diverse defendants and just go after them, in which case you would only have one basis for federal jurisdiction.

MS. GRAYSON: I was thinking I would not drop the federal question count. Let's say I left the federal question cause of action in the complaint. It might or might not survive summary judgment depending on what discovery showed but I also drop the non-diverse defendants so that I now have a belt and suspenders in terms of federal jurisdiction.

THE COURT: That doesn't obviate the need for the motion practice. The motion practice continues, 12(b)(1), 12(b)(6).

MS. GRAYSON: But they can at that point go ahead and have discovery with regard -- maybe if we have diversity jurisdiction as well they may not want to make a 12(b)(1) motion. Maybe they'll just want to make a 12(b)(6) motion. If they want to do a 12(b)(6) motion, they're entitled to. They

could have done that when I served them with the complaint back in April. Anybody who wants to make a 12(b)(6) motion can make a 12(b)(6) motion.

THE COURT: They do want to make a 12(b)(6) motion, but I just want to make sure that we are clear there would be no basis for a 12(b)(1) motion at least under the stated arguments that have been made, if there's no federal question.

MS. GRAYSON: But I guess what I'm saying there is a federal question, but I would have two kinds of jurisdiction if I dismissed the non-diverse defendants.

THE COURT: Just so that we're all talking about the same thing, the basis, the jurisdictional hook for a federal question is a violation of that statute which makes it illegal to divulge or disseminate financial information.

MS. GRAYSON: I think it's the federal Fair Credit Act or something like that.

THE COURT: And the last time we were together I think we, or at least I determined that that theory might be on a fairly thin reed, because as I originally understood your argument, it was that the Ressler defendants, if I could call them that, obtained personal financial information about you and provided it to the trustee. Near the end of the last session the theory became that the trustee independently came into possession of personal financial information about you.

MS. GRAYSON: May I clarify?

THE COURT: Again?

MS. GRAYSON: About that particular part?

THE COURT: Sure.

MS. GRAYSON: Here's what Mr. Meyer told me. When I was with Mr. Meyer in the morning in his offices, his office was a multistate office, they had offices in downtown New York, he said, "This may embarrass you but I pulled your credit report. You may be concerned about this." Many hours passed. He called me about 10:00 p.m. the same evening when he had gone home to the State of Georgia and he said, "The Resslers also pulled the credit report and provided it to me," and his tone had changed, became very hostile at that time. So that I would say -- I think it's clear now.

THE COURT: Okay.

MS. GRAYSON: And what I'm saying is maybe if I simply drop the defendants then we'll still have federal question jurisdiction assuming that issue survives summary judgment. But if it doesn't survive summary judgment or doesn't survive -- I feel that I'm not making myself clear. I'm very sorry about that.

THE COURT: You jumped to summary judgment now. We're still at Rule 12.

MS. GRAYSON: Let me say a 12(b)(1) motion, if I drop the non-diverse defendants, then we have two hooks. We have the federal question coming from the Fair Credit Act. We also

have diversity jurisdiction.

THE COURT: I guess what I'm not understanding -- obviously, you can proceed whichever way you want, but the only purpose for dismissing the non-diverse defendants is to obviate the need to litigate the federal question issue. If you're going to persist on the federal question issue then why drop anyone?

MS. GRAYSON: What I'm thinking was the way the Court had structured it previously was that we go ahead with the 12(b)(1) motion and discovery on the 12(b)(1) motion and when I take document discovery and I depose people and then if I didn't have what I needed to survive that motion then I could file an amended complaint that dropped the defendants and then we'd start on regular full discovery. And I'm thinking why should I waste months on that. Maybe I should just get rid of them but keep the cause of action because it's a useful cause of action. A jury could award me damages on it.

THE COURT: Because the cause of action is the only reason we're talking about 12(b)(1), right?

MS. GRAYSON: I suppose if I only, I think the reason we're talking about 12(b)(1) is because right now the way the complaint is written, the only basis for jurisdiction is federal question.

THE COURT: Right, but if you're going to persist in maintaining that cause of action that's going to continue to be

a problem for the defendants. And they will continue, I suppose they're insisting on filing a 12(b)(1).

What I'm coming around at, despite the clarification from the judge, Judge Cristol, and the provision of the termination statement, I think we're back where we started. Defendants want to make a 12(b)(1) motion and a 12(b)(6) motion. They should be allowed to do so. On a 12(b)(1) motion you're entitled to some limited discovery on that issue and you should be allowed to take that discovery and once that discovery is obtained, you can, we can finish briefing this motion.

MS. GRAYSON: Can I ask a couple of more questions?

THE COURT: Sure.

MS. GRAYSON: If I were to dismiss the non-diverse defendants would the result be that I can now take discovery, regular discovery as opposed to having to take it in two tranches?

THE COURT: Well, I mean, you'll have to talk to your opposing counsel about that, but I suspect if you were to drop the non-diverse defendants and persist in the federal cause of action that they will continue to move for 12(b)(1) because they don't believe that there's a basis for jurisdiction and they'll continue to move for 12(b)(6). But that's not something that I can answer.

MS. GRAYSON: But I guess my question was would I then

be able to proceed with full merits discovery?

THE COURT: No.

MS. GRAYSON: That was really what I wanted to know, can I speed things up in that way?

THE COURT: No.

MS. GRAYSON: And my remaining question is trivial. My remaining question is that I am going on vacation to South Africa, leaving on the 23rd of this month and coming back on I think it's the 11th of next month and I was wondering if we could formally or informally stay proceedings while I'm gone.

THE COURT: How long will you be away?

MS. GRAYSON: A little over two weeks.

THE COURT: I have no problem with that.

MR. RESSLER: Plaintiff has no problem -- I'm sorry, defendants have no problem with that.

MS. GRAYSON: I'd really appreciate that professional courtesy. Thank you, everyone.

THE COURT: Now, did I ask you folks to come up with a discovery schedule for the 12(b)(1) motion the last time we were together? I'm sorry, Mr. Ressler, did you have something more?

MR. RESSLER: I just wanted to make two points, your Honor. Number one, it is curious to me that Ms. Grayson is saying, well, I need some discovery on a, before I can brief a 12(b)(1) motion, in case, because I have to find what I need or

something to that effect, and I think this is a confirmation of the basis for our Rule 11 motion, because the way I understand it you're supposed to file a lawsuit when you have a reasonable basis to believe that there are facts that will support it, not file a cause of action, go on a fishing expedition and hope you find something that supports your allegations.

THE COURT: Well -- I'm sorry. You can finish.

MR. RESSLER: The other point is in light of Ms. Grayson's comments that she may or may not discontinue against the non-diverse defendants, I think this emphasizes the need for the plaintiff to be heard on the 12(b)(1) and the 12(b)(6), because I agree with the Court. You're completely right. If jurisdiction is based on this federal statute, and that jurisdiction doesn't exist, the Court has no further power to act. This is incontrovertible, the defendants agree.

However, in a situation where Ms. Grayson has just told us, well, if I lose, if I don't find what I need for the 12(b)(1) opposition, then I'm just going to drop the non-diverse defendants, I have diversity jurisdiction and I will go forward with what I will characterize as the legal malpractice and defamation claims, and of course if there are diverse parties she is entitled to do that. However, that means there will just be two motions to dismiss. If she is intending to proceed that way, it would be judicially economical to have both of these motions heard together so that

if she gets it in her mind to discontinue against non-diverse defendants at some point she knows the answer to that already. Because I would agree with Ms. Grayson that if she dropped, if right now she dropped the non-diverse defendants she would have two bases of federal jurisdiction, the statutory and the diversity issue. Once she loses -- and I agree with the Court, there is a thin reed to support that -- once she loses on the financial disclosure jurisdiction argument she has then to face a Rule 12(b)(6) and I think technically it would mean two separate motions. But on the basis of her comments in court today it would be better if we could do all of that now. And I think it would move things along. This is a lawsuit that is a monumental waste of the Court's time, to say nothing of a waste of time for the defendants. Got to go through it, got to do what has to be done. But hopefully let's try to expedite the process rather than spread it out.

MS. GRAYSON: Your Honor, I completely agree with Mr. Ressler that it would be a good idea for the defendants to file both the 12(b)(1) motion and the 12(b)(6) motion at the same time at their earliest convenience. And what I think would be very efficient would be if they could maybe write it up and file it around the time that I get back, that would give them until, let's say I'm getting back to work around March 13th, if they could serve me mid-March or something when I get back, I could then respond to the 12(b)(6) motion

reasonably promptly because it doesn't require any discovery and then I could conduct the limited discovery that I get for the 12(b)(1) motion and we'll move forward, we'll litigate those issues.

MR. RESSLER: Your Honor, in a prior ruling of this Court I think our papers are due March 30th, and when I say papers, I mean you directed the defendants to file their motions to dismiss pursuant to Rule 12 by March 30th, and Ms. Grayson to file her opposition to the pending Rule 11 motion also by March 30th. I think those are, those deadlines are reasonable and I'd like to stick to those.

THE COURT: Okay.

MS. GRAYSON: March 30th is fine for the filing of the 12(b)(6) and 12(b)(1) motions. In terms of my replying to the Rule 11 motion, as it was originally filed, the Rule 11 motion was premised on the fact that, predominantly on the fact that my action was without merit because I couldn't possibly prove it because Judge Cristol had forbidden me from obtaining discovery. So I don't really think there's much to the motion as it exists now. I could respond to it.

On the other hand, if the Court could possibly be influenced by things like the trustee's statement or is going to take a look at, a broader look at whether or not my action has merit or whether I proceeded in good faith, in that case I'd like to take discovery concerning the trustee's statement

by getting document discovery and depositions from the parties to attack that statement, if the Court is really going to look at the Rule 11 at this time and take an overall look at the merits and whether my behavior has been within reason or fair or professional.

THE COURT: Again, I haven't taken a look at the law on this in a little bit but my understanding is in a situation like this it is sometimes best to defer on the Rule 11 motion.

MS. GRAYSON: So the question is should I file something?

THE COURT: Oh, you should absolutely file. You should absolutely file so that I have all of the arguments before me.

MS. GRAYSON: So just respond to the motion as it was filed?

THE COURT: Yes.

MS. GRAYSON: Okay.

THE COURT: That's the only motion that there is.

MS. GRAYSON: Could I have another week to do that, another two weeks, like mid-April?

THE COURT: No.

MS. GRAYSON: Okay.

THE COURT: In terms of how, not that anyone is asking me, but how I would rather things proceed, then again, it's all going to be based on what the merits are of the 12(b)(1)

motion. If you, Ms. Grayson, believe that there's a chance that you lose that motion and if so you would simply refile a diversity action --

MS. GRAYSON: I have really no doubt that's what I would do.

THE COURT: Why don't you just do that now and save us all that time? I'm not going to tell you now that you should not pursue something you believe at this point you're entitled to.

MS. GRAYSON: Let me -- I'm very frank today. I'm going to be frank again. So I think that I'm going to, I'll drop those defendants, it's probably more trouble than it's worth and then I'll have two bases for jurisdiction and I think that feels safer to me. Now, the defendants want to file that Rule 12(b)(6) motion in the near future. They want to file it.

THE COURT: Yes.

MS. GRAYSON: So if they're going to file a Rule 12(b)(6) motion, very frequently when I get one of those it shows what the weaknesses are in the complaint and I have the right to file an amended complaint at that time.

THE COURT: You do.

MS. GRAYSON: And my inclination, therefore, would be to get that 12(b)(6) motion, I'll almost certainly move to drop the non-diverse defendants. I'll fix any weaknesses that are brought to my attention by the Rule 12(b)(6) motion and that's

what will actually happen here.

MR. RESSLER: Your Honor, I'm following, but I thought Ms. Grayson just said she is now going to drop the non-diverse defendants, which I would state for the record are Trade Winds Holding Inc., Coreolis Holdings Inc., Richard Ressler and Orchard Capital Corporation.

MS. GRAYSON: I don't think Coreolis is non-diverse, but I could check that.

MR. RESSLER: They're California.

MS. GRAYSON: I think they're a Delaware corporation, but in any event.

MR. RESSLER: Okay. So I don't know, it's unclear to me at this moment who she's dropping, whether there's diversity or not, but certainly if I guess before March 30th, which I'd like to really know before March 30th, because if she drops the non-diverse defendants then I think it is incumbent upon the Court to rule upon both bases of jurisdiction.

THE COURT: Sure.

MR. RESSLER: If she does that, I don't know what's going to happen, but we'll see. And we'll go from there. So as to the Rule 11, Ms. Grayson misstated the basis of our Rule 11 motion.

THE COURT: We don't need to get into that.

MR. RESSLER: So we're going to proceed with that, and we will submit our Rule 12 motion whenever it is that she wants

to submit her Rule 11 opposition. I think the prior ruling of the Court is that March 30th works, but if there's an application to change that, I'll listen.

THE COURT: There was an application to change that and I denied it.

MS. GRAYSON: I'd be tickled pink if it were April 15, but if that's a problem I'll do March 30.

THE COURT: March 30. I already decided that five minutes ago.

MS. GRAYSON: So we'll all do March 30th. To recap, they're going to file a Rule 12(b)(6) motion and maybe a Rule 12(b)(1) motion on March 30th.

THE COURT: I think they'll file both.

MS. GRAYSON: They'll file both. I'll probably respond with an amended complaint and also on March 30th I'll also respond to the pending Rule 11 motion.

THE COURT: Right.

MS. GRAYSON: I appreciate it. Thank you, your Honor.

MR. RESSLER: Thank you, your Honor.

THE COURT: Thank you, folks.

(Adjourned)