UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VIOLET ELIZABETH GRAYSON,

                    Plaintiff,

          -against-

RESSLER & RESSLER, ELLEN
WERTHER, and BRUCE RESSLER,

                    Defendants.

<u>OPINION AND ORDER</u>

15 Civ. 8740 (ER)

Ramos, D.J.:

        Violet Elizabeth Grayson ("Plaintiff" or "Grayson") brings this action against Ressler &

Ressler, a law firm, Ellen Werther ("Werther"), and Bruce Ressler ("Ressler") (together,

"Defendants"). Before this Court is Defendants' motion to dismiss the Amended Complaint in

its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6), and Defendants' motion for

sanctions pursuant to Rule 11.

        For the reasons set forth below, Defendants' motion to dismiss is GRANTED in part and

DENIED in part, and their motion for sanctions is DENIED without prejudice.


I.      **BACKGROUND**

        A.  **Factual Background**[1]

        As relevant to the instant motions, Grayson, an attorney, represented TradeWinds Airlines

Inc. ("TW Airlines") in a veil piercing case in the Southern District of New York ("*TW Airlines*

*Action*"). Am. Compl. ¶¶ 2, 13. Werther and Ressler, partners in the law firm Ressler & Ressler,

represented Coreolis Holdings ("Coreolis") and TradeWinds Holdings ("TW Holdings") in a

---

[1] The following facts are drawn from allegations contained in the Amended Complaint (Doc. 97) that the Court
accepts as true for purposes of the instant motion, documents incorporated by reference, and matters subject to
judicial notice. *See New York Pet Welfare Ass'n, Inc. v. City of New York*, 850 F.3d 79, 86 (2d Cir. 2017) (citation
omitted).

separate but parallel veil piercing case in the Southern District of New York ("*Coreolis* Action"). *Id.* at ¶¶ 3-5, 27. Coreolis wholly owned TW Holdings, which in turn was the former corporate parent of TW Airlines. *Id.* at ¶ 15. Grayson invokes diversity jurisdiction in the instant action as she is a citizen of California, all Defendants are citizens of New York, and the amount in controversy exceeds $75,000. *Id.* at ¶¶ 2-5, 7.

In 2005, prior to Grayson's representation of TW Airlines, Grayson represented Jet Star Airlines in a different veil piercing action against George Soros ("Soros") and Purnendu Chatterjee ("Chatterjee") ("*Jet Star* Action"). *Id.* at ¶¶ 9-11. Jet Star sought to recover the amount of a default judgment it had obtained against the defunct C-S Aviation Corporation ("C-S Aviation") by piercing C-S Aviation's corporate veil and reaching its principals, Soros and Chatterjee. *Id.* at ¶ 10. The parties settled shortly thereafter, executing a settlement agreement and a confidentiality agreement. *Id.* at ¶¶ 11, 16, 50.

Separately, two years later, on June 27, 2008, TW Airlines' North Carolina counsel, Tuggle Duggins P.A. ("Tuggle Duggins"), obtained a default judgment of approximately $54 million against C-S Aviation in North Carolina state court.[2] *Id.* at ¶ 13. On June 30, 2008, Grayson commenced the *TW Airlines* Action, seeking to recover the amount of TW Airline's default judgment against C-S Aviation from Soros and Chatterjee, the same defendants as in the *Jet Star* Action. *Id.* at ¶¶ 12-13. United States District Judge John F. Keenan presided over the case. *Id.* at ¶ 13.

On July 25, 2008, TW Airlines filed a petition for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of Florida. *Id.* at ¶ 14. It was subsequently converted to a Chapter 7 bankruptcy on October 30, 2008. *Id.* at ¶ 17. On October 31, 2008,

---

[2] After TW Airlines obtained that default judgment, Coreolis and TW Holdings sought revision of the judgment, asserting that some or all of the funds belonged to them. *Id.* at ¶¶ 15, 19. After discovery and trial on the issue of damages, Coreolis and TW Holdings obtained a default judgment of approximately $38 million and TW Airlines obtained a modified judgment of $56 million. *Id.* ¶¶ 19, 26.

Barry E. Mukamal was appointed as the Chapter 7 trustee (the "Trustee") and Grayson sought to be retained as special litigation counsel for TW Airlines. *Id.* at ¶¶ 17, 21.

Grayson faced several objections to her continuing as counsel for TW Airlines. In late September 2008, Soros' counsel told Grayson that she had violated the terms of the *Jet Star* confidentiality agreement and/or the settlement agreement by representing TW Airlines in the *TW Airlines* Action. *Id.* at ¶ 16.

On November 26, 2008, the Defendants, acting as counsel for Coreolis and TW Holdings, opposed the Trustee's motion to retain Grayson as special litigation counsel for the *TW Airlines* Action, which he had filed in the bankruptcy case. *Id.* ¶ 21; *see* Objection to Trustee's Application, In re TradeWinds Airlines Inc., No. 08-bk-20394 (AJC) (Bankr. S.D. Fla. Nov. 26, 2008), Doc. 231. Coreolis and TW Holdings argued that Grayson should not be retained because Soros was attempting to disqualify her from representing TW Airlines. Am. Compl. ¶ 21. On January 7, 2009, the bankruptcy court granted Grayson's retention over this objection. *Id.*; *see* Order Granting Application to Employ J Nathan Duggins III and Violet Elizabeth Grayson as Special Litigation Counsel, In re TradeWinds Airlines Inc., No. 08-bk-20394 (AJC) (Bankr. S.D. Fla. Jan. 7, 2009), Doc. 258. However, Grayson alleges that Defendants' opposition to her appointment gave the Trustee "leverage" to lower Grayson's contingency fee. Am. Compl. at ¶ 22. Prior to the opposition, the agreed upon contingency fee was 50% of the first $15 million recovered, and 33% of any recovery in excess of $15 million.[3] *Id.* at ¶ 14. After the opposition, the Trustee modified the contingency fee to 40% of the first $14 million recovered, and 33% of any recovery in excess of $14 million. *Id.* at ¶ 22.

On February 2, 2009, Soros moved to disqualify Grayson as counsel in the *TW Airlines* Action for violating her confidentiality obligations arising from the *Jet Star* Action. *Id.* at ¶ 23;

---

[3] This fee was to be shared equally by Grayson and Tuggle Duggins. *Id.* at ¶¶ 12, 14.

*Tradewinds Airlines, Inc. v. Soros*, No. 08 Civ. 5901 (JFK), 2009 WL 1321695, at *3 (S.D.N.Y. May 12, 2009). Specifically, Soros argued that Grayson's participation in the *TW Airlines* Action violated and will cause further violations of the *Jet Star* protective order and settlement agreement. *Tradewinds Airlines*, 2009 WL 1321695 at *1, 3, 5-7. On May 12, 2009, Judge Keenan denied Soros' motion. *See id.* at *10; Am. Compl. at ¶ 23. However, he noted that certain of Grayson's disclosures in the original and amended complaints and a declaration filed in the *TW Airlines* Action "plainly violat[ed] her confidentiality obligations under the [*Jet Star*] Settlement Agreement." *Tradewinds Airlines*, 2009 WL 1321695 at *6-7. He also noted that her prospective re-discovery of information originally produced in the *Jet Star* Action could constitute an arguable violation of the *Jet Star* protective order. *Id.* at *9. Nonetheless, he concluded that these violations did not necessitate disqualification because they did not sufficiently "taint" the proceeding, and because the specified contractual remedy for the violations is disgorgement of the *Jet Star* settlement funds, not disqualification. *Id.* at *7-10.

On October 28, 2010, Coreolis and TW Holdings filed the *Coreolis* Action, seeking to recover on the default judgment they obtained against C-S Aviation in North Carolina state court against Soros and Chatterjee. *Id.* at ¶ 27. Judge Keenan subsequently consolidated this action with the *TW Airlines* Action (together, the "Consolidated Actions"). *Id.*

### 1. Consolidated Actions

In the autumn of 2010, Grayson and Defendants allegedly reached an oral agreement to work together, "forming a special confidential relationship of trust." *Id.* at ¶¶ 28, 30. The oral agreement provided that the parties would "work together cooperatively to successfully prosecute their parallel veil piercing cases, and each benefit from their respective contingency fee." *Id.* at ¶ 101. This agreement was "developed by [the parties'] subsequent conduct and dealing" and was "to some degree evidenced by, but not fully embodied by, the Joint Prosecution, Common Interest, and Confidentiality Agreement" executed by the parties and other

lawyers in June 2013. *Id.* at ¶ 30.

The Consolidated Actions were subject to a partial stay over the course of three years because Soros and Chatterjee, acting on behalf of C-S Aviation, had appealed the two North Carolina default judgments.[4] *Id.* at ¶ 31. During that time, however, Judge Keenan permitted depositions of five witnesses who were elderly or ill, and production of documents authored by or sent to the deponents. *Id.*; *see* Stipulation and Order Regarding Modification of Stay and Number of Depositions at 1-2, TradeWinds Airlines, Inc. v. Soros, No. 08 Civ. 5901 (JFK) (S.D.N.Y. Feb. 27, 2013), Doc. 103. One of the deponents was C-S Aviation's first President, Bharat Bhise ("Bhise"). Am. Compl. at ¶ 32. Grayson took the lead in deposing Bhise and "elicited much useful testimony" from him. *Id.* However, Grayson complains that Werther, who also took part in deposing Bhise, sought to prove an unnecessary point at the deposition, that C-S Aviation had no assets and was insolvent, and spent an inordinate amount of time on this issue. *Id.* at ¶ 33. Grayson also complains that Werther also sought to hire her friend, attorney Martin Bienenstock ("Bienenstock"), to render an expert opinion regarding C-S Aviation's financial condition, and demanded that Grayson pay for half of Bienenstock's bill. *Id.* at ¶ 34. Grayson avers that the point Werther sought to make was moot because the last president of C-S Aviation, James Walsh, had already filed a declaration stating that C-S Aviation never had any assets. *Id.* at ¶ 33.

On July 10, 2013, the partial stay of discovery was lifted. *Id.* at ¶ 35. Grayson immediately suggested that Werther subpoena all the deposition transcripts Grayson had from the *Jet Star* Action. *Id.* Grayson thereafter delivered the original deposition transcripts to Werther pursuant to those subpoenas with the express understanding that they would be copied and returned. *Id.* However, Werther never returned either the originals or copies. *Id.*

---

[4] The stay was imposed on February 23, 2009. *See* Memorandum Opinion & Order, TradeWinds Airlines, Inc. v. Soros, No. 08 Civ. 5901 (JFK) (S.D.N.Y. Feb. 23, 2009), Doc. 36.

Grayson further states that Werther was determined to have as co-counsel a law firm that would be able to finance her "lavish and unnecessary expert witness hiring plan," and at one point persuaded "a reluctant Grayson" to ask the Trustee to fund the litigation expenses. *Id.* at ¶ 36. The Trustee declined, and became "needlessly anxious about litigation costs, even though Grayson assured him that she could fund normal and necessary litigation expenses." *Id.* Thereafter, Grayson alleges that Werther resolved to have Grayson terminated and replaced with a "deep pocket law firm" that will help pay for Bienenstock's expert services. *Id.* at ¶¶ 37-38. Without providing further details, Grayson states that Werther directly or indirectly contacted counsel for the bankruptcy estate's primary creditor and "disparaged" Grayson to that attorney. *Id.* at ¶ 38. That attorney then questioned the Trustee's employment of Grayson, and threatened to sue the Trustee. *Id.*

On or about August 10, 2013, Ressler and Werther stopped answering Grayson's e-mails and telephone calls. *Id.* at ¶ 39. At approximately the same time, the Trustee's counsel, Robert Mayer ("Mayer"), informed Grayson that he wished to meet with her, Werther and Ressler. *Id.* at ¶ 40. Mayer subsequently informed Grayson that Werther and Ressler had told him that they would only meet with him without Grayson, and thus, he arranged two separate meetings for August 15, 2013. *Id.* at ¶¶ 40-41. Grayson states that Werther and Ressler's refusal to conduct a joint meeting demonstrates that they intended to make statements that they did not want Grayson to hear, sought to prevent her from refuting their statements, and wished to impede her ability to repeat their false statements in a court of law. *Id.* at ¶ 40.

### 2. August 15, 2013 Meetings

On the morning of August 15, 2013, Grayson met with Mayer at his law firm, Gordon & Rees, in downtown Manhattan. *Id.* at ¶¶ 41-42. During the meeting, they discussed substantive issues in the Consolidated Actions. *Id.* at ¶ 42. Although at one point Mayer indicated that he

had obtained her credit or financial information, Grayson claims that the tone of the entire meeting was "highly cordial." *Id.*

After Mayer ended his meeting with Grayson, he immediately went to Ressler & Ressler's office to meet with Werther and Ressler. *Id.* Werther and Ressler made the following statements to Mayer:

- Grayson neglected her responsibilities by failing to do her fair share of the work in the Consolidated Actions, leaving Defendants to do the "lion's share" of the work;

- Grayson could not take a leading role in depositions because she was representing TW Airlines subject to a conflict of interest, violating her ethical obligations as an attorney;

- Grayson had not reimbursed Defendants for half of certain modest expenses, and that Grayson could not pay for an expert witness they wished to engage, which they supported by presenting her credit and/or financial information to Mayer; and

- Grayson was unresponsive.

*Id.* at ¶¶ 43-46. Grayson claims that these statements were false or misleading because:

- Grayson did the vast majority of the work by submitting multiple oppositions to Rule 12(b)(6) motions, obtaining leave for necessary interim discovery while the default judgment appeals were pending, proposing that Werther subpoena the *Jet Star* transcripts and ensuring that the subpoenas were not quashed, and taking the lead role in the Bhise deposition;

- Grayson successfully traced ownership and control of C-S Aviation to Soros and Chatterjee in the *Jet Star* Action, laying the foundation for the subsequent Consolidated Actions, wrote the veil piercing complaint for TW Airlines which Defendants adopted for their veil piercing complaint, and provided legal authority and briefing on an issue for the North Carolina damages trial;

- Grayson was not conflicted in her representation of TW Airlines;

- Defendants had only recently requested payment for half of the litigation expenses from Grayson;

- Grayson promptly responded to all of Ressler and Werther's communications, questions and issues.

*Id.* at ¶¶ 43, 45, 48-51, 83.

Mayer telephoned Grayson later that same day and told her, "[Werther] wants you gone." *Id.* at ¶ 47. He also related to Grayson what Werther and Ressler told him during their meeting. *Id.*

### 3. Termination of Grayson

On August 19, 2013, the Trustee dismissed Grayson as TW Airline's special litigation counsel via email. *Id.* at ¶ 53. In the email, he stated that Werther was a reason for Grayson's dismissal. *Id.* Grayson subsequently asked the Florida bankruptcy court to overrule the Trustee's decision, arguing that her dismissal occurred late in the case, after Grayson had served as counsel for nearly five years, and would likely produce adverse results for the bankruptcy estate. *Id.* at ¶ 54. The bankruptcy court denied her application, deferring to the Trustee's choice of counsel. *Id.*

Grayson then moved to withdraw as counsel in the Consolidated Actions in accordance with Local Civil Rule 1.4, which was granted. *Id.* at ¶¶ 54-55, 57. The Trustee moved in the Florida bankruptcy court to enforce Grayson's termination, and also sought to impose sanctions and a gag order against Grayson. *Id.* at ¶ 58. The bankruptcy court granted the Trustee's motion to enforce Grayson's termination but declined to impose sanctions or a gag order. *Id.* It also noted that Grayson might be entitled to some compensation for her representation. *Id.*

At Werther's recommendation, the law firm Susman Godfrey LLP ("Susman Godfrey") replaced Grayson in the Consolidated Actions on September 18, 2013. *Id.* at ¶ 59. Grayson avers that neither the attorneys from Susman Godfrey nor Werther were able to "master[] the pertinent facts," and unnecessarily accumulated litigation expenses for expert witnesses, including Bienenstock. *Id.* at ¶ 60. She further criticizes Susman Godfrey and Werther's opposition to Soros and Chatterjee's motion for summary judgment in the Consolidated Actions. *Id.* at ¶¶ 61-62. Specifically, she states that their representation was grossly ineffective because they left out highly probative evidence, certain helpful arguments and pertinent legal citations.

*Id.* at ¶¶ 61-65.  On March 31, 2015, Judge Keenan granted Soros and Chatterjee's motion for summary judgment, which Grayson claims would not have occurred had she remained in the litigation.  *Id.* at ¶ 65.

### 4.  Grayson's Application for Compensation

Grayson subsequently applied to the bankruptcy court, seeking hourly compensation for the work she performed on the Consolidated Actions.  *Id.* at ¶ 67.  On March 16, 2016, the bankruptcy court held a hearing during which one of Trustee's attorneys, Lynn Gollin ("Gollin"), argued that Grayson was not entitled to any compensation because TW Airlines lost the *TW Airlines* Action.  *Id.*

On May 10, 2016, a settlement conference was held, which was attended by Mayer, Gollin, the Trustee and Grayson.  *Id.* at ¶ 69.  Although Defendants declined to appear, they spoke to Mayer telephonically during the conference.  *Id.*  The settlement conference resulted in a partial settlement, subject to court approval.  *Id.* at ¶ 70.  The parties agreed that Grayson would be compensated at $500 per hour for the work she performed with the exception of certain categories of time entries.  *Id.*  The Trustee agreed to this compensation regardless of whether Grayson was fired for cause or not, and waived all claims for costs the bankruptcy estate had incurred in responding to Grayson's applications.  *Id.*  Grayson agreed to file a revised fee application, and in the meantime, she received an interim fee of $90,000.  *Id.*  The entire settlement was subject to the condition that the payment could be adjusted at the end of the bankruptcy case in the event of administrative insolvency.  *Id.*

On May 26, 2016, the Trustee and Ressler & Ressler, on behalf of Coreolis, commenced a new veil piercing suit against Soros Fund Management, Soros' corporation, in North Carolina state court (the "2016 Action").  *Id.* at ¶¶ 64, 72, 74.  In the Amended Complaint, Grayson alleges that the Trustee and Ressler & Ressler moved forward with plans for the 2016 Action "clandestinely," and filed it after she had settled with the TW Airlines bankruptcy estate in order

to deprive her of any potential compensation for that action.  *Id.* at ¶ 72.  Thereafter, Grayson filed an interim fee application in which she requested a share of any recovery against Soros Fund Management, should the 2016 Action succeed, in addition to hourly compensation for her work on the Consolidated Actions since there would be considerable overlap in discovery.  *Id.* at ¶¶ 73-75.  Coreolis and TW Holdings opposed Grayson's revised fee application, urging not only that she should not share in any recovery from Soros Fund Management, but that she should disgorge the $90,000 interim fee as well.  *Id.* ¶ 76.  Grayson asserts that this opposition is at odds with the already agreed upon and approved settlement agreement between herself and the Trustee.  *Id.* at ¶ 77.

### B.  Procedural History

On August 14, 2015, Plaintiff commenced this action in the Supreme Court of the State of New York, County of New York against Defendants via summons and notice.  Doc. 1 at ¶ 4. On November 6, 2015, the action was removed to this Court.  *See id. generally*.  From November 11, 2015 to February 24, 2016, the instant action was stayed pending the Florida bankruptcy court's decision on Defendants' emergency motion to compel Plaintiff to voluntarily dismiss the instant action.  Docs. 5, 11, 24.  When the Court lifted the stay, it also granted Plaintiff leave to file a complaint that includes a federal cause of action.  Doc. 24.

On April 29, 2016, Plaintiff filed the Complaint that included a federal cause of action[5] against Defendants as well as Coreolis, Orchard Capital Corporation, TW Holdings, and Richard Ressler.  Doc. 26.

On December 15, 2016, Defendants filed the instant motion for sanctions pursuant to Rule 11, asserting that the Complaint was frivolous and without any evidentiary support.  Doc. 48.  On March 30, 2017, Defendants filed their first motion to dismiss the Complaint.  Doc. 84.

---

[5] The Complaint included a claim under the Fair Credit Reporting Act.  Doc. 26 ¶ 62-64.  Plaintiff voluntarily dismissed that claim on April 21, 2017.  Doc. 97.

On April 10, 2017, the Court extended Plaintiff's deadline to respond to the first motion to dismiss to April 27, 2017.  Doc. 96.

On April 21, 2017, in response to the motion to dismiss, Plaintiff filed the Amended Complaint, asserting the following ten causes of action against Defendants:  (1) defamation; (2) injurious falsehood; (3) tortious interference with contract; (4) tortious interference with prospective business advantage; (5) breach of contract; (6) *quantum meruit*; (7) unjust enrichment; (8) conversion; (9) trespass to chattel; and (10) *prima facie* tort.  Doc. 97.

On April 21, 2017, Defendants argued that the Amended Complaint was untimely, Doc. 100, and on April 24, 2017, Plaintiff requested leave to file another amended complaint should the Court strike the Amended Complaint as untimely, Doc. 103.  On April 25, 2017, the Court noted that Plaintiff was permitted to file the Amended Complaint as of right and pursuant to the Court's order on April 10, 2017, and denied Defendants' first motion to dismiss the Complaint as moot.  Doc. 104.

On June 1, 2017, Defendants filed the instant motion to dismiss the Amended Complaint in its entirety pursuant to Rule 12(b)(6).  Doc. 121.  The instant motion for sanctions also remains pending as the factual allegations at issue in that motion are largely repeated in the Amended Complaint.

## II.      DISCUSSION

### A.      Rule 12(b)(6) Motion to Dismiss

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  However, the Court is not required to credit "mere conclusory

statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

In determining the motion to dismiss, the Court may "consider documents that are referenced in the complaint, documents that the plaintiffs relied on in bringing suit and that are either in the plaintiffs' possession or that the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken." *Silsby v. Icahn*, 17 F. Supp. 3d 348, 354 (S.D.N.Y. 2014), *aff'd sub nom. Lucas v. Icahn*, 616 Fed. Appx. 448 (2d Cir. 2015) (summary order) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)); *see also DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). To be incorporated into the complaint by reference, "the [c]omplaint must make a clear, definite and substantial reference to the documents." *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 691 (S.D.N.Y. 2011) (internal quotation marks and citation omitted). The Court finds that the Joint Prosecution and Confidentiality Agreement executed by Plaintiff in connection with the Consolidated Actions is substantially incorporated into the Amended Complaint by reference, and thus, the Court will consider this confidentiality agreement in assessing Defendants' motion to dismiss. The Court will further take judicial notice of public filings made in court proceedings, "not for the truth of the matters asserted in the other litigation[s], but rather to establish the fact of such litigation[s] and related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). Defendants further ask the Court to consider the extrinsic evidence they

submitted in support of their motion for sanctions in assessing the motion to dismiss, arguing that the evidence directly and dispositively rebuts the factual allegations in the Amended Complaint. But as set forth above, in determining a Rule 12(b)(6) motion, the Court *must* accept all factual allegations in the complaint as true and will therefore not consider that extrinsic evidence.[6]

### 1. Defamation

To establish a claim of defamation under New York law, a plaintiff must plead "(1) a defamatory statement of fact; (2) that is false; (3) published to a third party; (4) 'of and concerning' the plaintiff; (5) made with the applicable level of fault on the part of the speaker; (6) either causing special harm or constituting slander per se; and (7) not protected by privilege." *FTA Mkt. Inc. v. Vevi, Inc.*, No. 11 Civ. 4789 (VB), 2012 WL 383945, at *6 (S.D.N.Y. Feb. 1, 2012) (citing *Albert v. Loksen,* 239 F.3d 256, 265-66 (2d Cir. 2001)). Grayson argues that Werther and Ressler are liable for defamation *per se* for making statements to Mayer on August 15, 2013 that tended to disparage her in her profession as an attorney. *Doe v. Doe*, No. 16 Civ. 0332 (NSR), 2017 WL 3025885, at *11 (S.D.N.Y. July 14, 2017) (a statement is *per se* defamatory when it tends to injure another in his or her trade, business, or profession) (citing *Liberman v. Gelstein,* 80 N.Y.2d 429, 435 (1992)). The allegedly *per se* defamatory statements are that Grayson (1) was violating rules of professional ethics and conduct by representing TW Airlines subject to her conflict of interest, (2) could not handle documents or take a leading role at depositions because of this conflict, (3) did not do her fair share of the work on the veil piercing cases, and (4) was unresponsive to Defendants.[7] Am. Compl. ¶¶ 43-53, 83.

---

[6] Defendants rely on *United States ex rel. Hayes v. Allstate Ins. Co.*, 686 F. App'x 23 (2d Cir. 2017) for the proposition that the Court can take extrinsic evidence of bad faith in determining a Rule 12(b)(6) motion. That case is readily distinguishable in that the attorney in that case *admitted* that he did not have actual knowledge of the facts in the complaint, contrary to what he said in the complaint. *Id.* at 26.

[7] Grayson also makes a passing allegation that Werther sought to foment discord between Grayson and the Trustee by disparaging Grayson to TW Airline's primary creditor, Am. Compl. ¶ 38, but fails to plead with sufficient particularity what Defendants are alleged to have said and to whom they said it. *Germain v. M & T Bank Corp.*, 111 F. Supp. 3d 506, 537 (S.D.N.Y. 2015) (noting that the complaint must at least "identify the allegedly defamatory

### a.        Common Interest Privilege

Defendants argue that the allegedly defamatory statements are protected by the common interest privilege.  Otherwise defamatory statements may be protected under this qualified privilege if they are made to persons who have some common interest in the subject matter, such as when co-workers discuss an employee's misconduct, or when parties discuss a topic concerning their business relationship.  *See e.g. Ratajack v. Brewster Fire Dep't, Inc. of the Brewster-Se. Joint Fire Dist.*, 178 F. Supp. 3d 118, 166 (S.D.N.Y. 2016); *Yong Ki Hong v. KBS Am., Inc.*, 951 F. Supp. 2d 402, 437 (E.D.N.Y. 2013); *Foster v. Churchill*, 87 N.Y.2d 744, 751, 665 N.E.2d 153 (1996) (finding *per se* defamatory statements to be protected under the common interest privilege).  The common interest privilege protects a defendant from liability unless he made the statements at issue *solely* with malice.  *Thai v. Cayre Group, Ltd.,* 726 F.Supp.2d 323, 330 (S.D.N.Y. 2010); *Chao v. Mount Sinai Hosp.*, No. 10 Civ. 2869 (HB), 2010 WL 5222118, at *7 (S.D.N.Y. Dec. 17, 2010), *aff'd sub nom. Hengjun Chao v. Mount Sinai Hosp.*, 476 F. App'x 892 (2d Cir. 2012); *Linell v. New York City Dep't of Educ.*, No. 15 Civ. 5085 (CBA) (MDG), 2017 WL 880853, at *2 (E.D.N.Y. Mar. 3, 2017).  The Court easily concludes that Grayson's role and professional conduct in the Consolidated Actions are of common interest to both Defendants and Mayer, counsel for the Trustee.  Thus, the common interest privilege would apply to the statements Werther and Ressler made on August 15, 2013, unless they spoke solely with malice.

"Malice includes spite, ill will, knowledge that the statements are false or reckless disregard as to whether they are false . . . Spite and ill will refer to the speaker's motivation for making the allegedly defamatory comments, not to the defendant's general feelings about the plaintiff."  *Broyles v. J.P. Morgan Chase & Co.*, No. 08 Civ. 3391 (WHP), 2010 WL 815123, at

---

statements, the person who made the statements, the time when the statements were made, and the third parties to whom the statements were published.") (citation omitted).

*5 (S.D.N.Y. Mar. 8, 2010) (citation omitted). Plaintiffs cannot plead malice simply by conclusorily labeling the statements so. *Thai*, 726 F. Supp. 2d at 335 (conclusory allegations, or charges based on "surmise, conjecture, and suspicion" are insufficient to defeat common interest privilege); *see also Ramsaran v. Abraham*, No. 15 Civ. 10182 (JPO), 2017 WL 1194482, at *6 (S.D.N.Y. Mar. 30, 2017) ("Mere conclusory allegations, or charges based upon surmise, conjecture, and suspicion are insufficient to defeat the qualified privilege.") (citation omitted). Instead, they must plead "facts suggestive enough to warrant discovery." *Yukos Capital S.A.R.L. v. Feldman*, No. 15 Civ. 4964 (LAK), 2016 WL 4940200, at *8 (S.D.N.Y. Sept. 14, 2016).

The gravamen of Grayson's defamation claim is that Werther and Ressler made the allegedly defamatory statements to Mayer with the malicious intent to injure Grayson's reputation and have her replaced with a law firm that would fund their "expert witness hiring plan." The Court finds that Grayson has pled sufficient facts to suggest that Defendants made the statements knowing them to be false, that is to say, solely with malice. Although Defendants point to pleaded allegations and raise other facts suggesting that their statements were true and that they were motivated by reasons other than malice towards Grayson—for example, the fact that Judge Keenan found Grayson to be representing TW Airlines subject to a conflict of interest—the Court must draw all inferences in Grayson's favor on a motion to dismiss. Furthermore, "[t]he nature and extent of defendants' *mens rea* is a question of fact not appropriate for disposition under Rule 12(b)(6)." *Flaherty v. All Hampton Limousine, Inc.*, No. 02 Civ. 4801 (DRH) (WDW), 2008 WL 2788171, at *8 (E.D.N.Y. July 16, 2008) (citing *Penn Group, LLC v. Slater,* No. 07 Civ. 729 (MHD), 2007 WL 2020099, at *6 (S.D.N.Y. June 13, 2007)). Accordingly, the Court cannot find that the Defendants are protected by the common interest privilege at this juncture.

### b. True Statements or Opinions

Defendants further argue that the alleged statements are substantially true or non-actionable opinions and thus cannot constitute defamation. Statements that are substantially true are not defamatory because "when the truth is so near to the facts as published that fine and shaded distinctions must be drawn and words pressed out of their ordinary usage to sustain a charge of libel, no legal harm has been done." *Tucker v. Wyckoff Heights Med. Ctr.*, 52 F. Supp. 3d 583, 597 (S.D.N.Y. 2014) (citation and internal modification omitted). Thus, only the gist or substance of the challenged statements must be true to render them non-defamatory. *Printers II, Inc. v. Professionals Pub., Inc.*, 784 F.2d 141, 146 (2d Cir. 1986) (citation omitted).

Statements of pure opinion are also not defamatory. *Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*, 230 F. Supp. 3d 290, 315 (S.D.N.Y. 2017); *Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 153-54, 603 N.Y.S.2d 813, 623 N.E.2d 1163 (1993) (citation omitted) ("[A] statement of opinion that is accompanied by a recitation of the facts on which it is based or one that does not imply the existence of undisclosed underlying facts" is a protected statement of opinion). Whether a statement is an opinion or fact depends on (1) whether the specific language at issue has a precise meaning which is readily understood or whether it is indefinite and ambiguous; (2) whether the statement is capable of being objectively characterized as true or false; (3) examination of the full context of the communication; and (4) consideration of the broader social context or setting surrounding the communication. *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 403 n.7 (2d Cir. 2006). "When the criticism takes the form of accusations of criminal or unethical conduct, or derogation of professional integrity in terms subject to factual verification, [however,] the borderline between fact and opinion has been crossed." *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 721-22 (S.D.N.Y. 2014) (citing *Trump v. Chi. Tribune Co.,* 616 F.Supp. 1434, 1435 (S.D.N.Y. 1985)) (internal modifications omitted). Furthermore, mixed opinion, which is a statement of opinion which implies that it is based on

facts that support the opinion unknown to the person hearing it, is actionable defamation. *Chau v. Lewis*, 771 F.3d 118, 129 (2d Cir. 2014).

The Court finds that, taking the Amended Complaint as true, three of the four statements are actionable. First, the statement that Grayson was violating rules of professional ethics and conduct by representing TW Airlines subject to a conflict of interest is not pure opinion. It is true that courts have found general statements that someone acted unprofessionally or unethically are opinions. *See Small Bus. Bodyguard Inc.*, 230 F. Supp. 3d at 315-16 (citations omitted). However, here, Grayson also alleges that Defendants claimed she was acting unethically because she was conflicted in her representation of TW Airlines as a result of her purported violations of the settlement agreement and protective order in the *Jet Star* Action. Whether an individual was subject to a conflict of interest has a precise meaning that can be true or false. Indeed, Grayson specifically alleges that she was not conflicted. Am. Compl. ¶ 48. Defendants argue that it is established that Grayson was conflicted because Judge Keenan previously found that Grayson violated her confidentiality obligations in representing TW Airlines. This argument is unavailing at this stage of the litigation. Although the Court may take judicial notice of public filings, such as court opinions, on a motion to dismiss, it can only do so to establish the fact of such litigations and related filings, not for the truth of the matter asserted.

Second, whether Grayson was unable to handle documents and take a leading role at depositions due to the conflict of interest is not an opinion but a factual statement. Like the prior statement, that statement's truth or falsity can be determined. Grayson alleges that this statement is false because she was not conflicted and was able to act as the lead attorney for the Bhise deposition and handle the documents related to that deposition. *Id.* at ¶¶ 48-49.

Third, the statement that Defendants did the "lion's share" or a majority of the work is also arguably objectively verifiable, and thus, not merely an opinion. Indeed, courts are frequently called upon to assess not only the amount of time, but the value an attorney has

contributed to particular cases. The parties can submit evidence to show their respective contributions in order to prove the truth or falsity of this statement.[8]

However, the Court finds that the last allegedly defamatory statement, that Grayson was unresponsive, is a non-actionable opinion. If Defendants said that Grayson never responded, or failed to respond within an hour, or a day, or a week, such statement would be verifiable. Whether someone is "unresponsive" is not. It also does not further imply that it is based on false undisclosed facts because the statement merely expresses that whatever Grayson's response time or rate was, Defendants were dissatisfied with it. Thus, "unresponsive" has no objectively discernible meaning.

### c. Defamatory Meaning

A statement must have a reasonably susceptible defamatory meaning for it to be actionable defamation. A statement is defamatory if it "exposes an individual to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or . . . induces an evil opinion of one in the minds of right-thinking persons, and ... deprives one of . . . confidence and friendly intercourse in society." *Croton Watch Co. v. Nat'l Jeweler Magazine, Inc.*, No. 06 Civ. 662 (GBD), 2006 WL 2254818, at *4 (S.D.N.Y. Aug. 7, 2006) (citations and internal modifications omitted). Defendants do not argue that the first two statements are not susceptible of defamatory meaning. Clearly, an allegation that an attorney is

---

[8] The first three allegedly defamatory statements are distinguishable from the cases Defendants rely on in arguing that the statements are pure opinion. In *Goldberg v. Coldwell Banker*, 159 A.D.2d 684, 684-85 (2d Dept. 1990) and *Shernoff v. Soden*, 2006 WL 2806448, *2 (N.D.N.Y. 2006), *aff'd*, 266 F. App'x 12 (2d Cir. 2008), the respective courts found that the statements were unprovable opinions. Indeed, the statements at issue in *Goldberg* were that the attorney was "most uncooperative, abrasive and dilatory," which merely expresses dissatisfaction and cannot be objectively proven true or false. 159 A.D.2d at 684-85. In *Shernoff*, the statements at issue were, *inter alia*, that defendants found plaintiff's legal advice to be "annoying and unhelpful," that plaintiff was a "thorn in the foot" of the case, that plaintiff threatened the objectives of the case, defendants would not choose to work for plaintiff, and intended to have him dismissed from the case. 2006 WL 2806448, *2. *Shernoff* found that none of these statements are empirically provable, nor do they imply that they have any undisclosed factual basis. *Id.* *2, 4-6. In contrast, whether an attorney was conflicted, and which party contributed more are objectively verifiable. Defendants state that the statements made in *Goldberg* and *Sternoff* are more disparaging than the alleged statements at issue here. That may be true, but opinions are exempted from liability.

knowingly laboring under a conflict with her client speaks to that attorney's ethical character. However, Defendants aver that the statement that they did the "lion's share" of the work does not expose Grayson to such negative opinions in others. The Court disagrees. Viewed in context, and drawing all inferences in Grayson's favor, the Court finds that the statement that Defendants were doing most of the work would cause third parties to hold a negative opinion about Grayson's diligence as an attorney.

### d. Special Damages

Defendants assert that the defamation claim should nonetheless fail because Grayson failed to plead special damages. However, Grayson alleges defamation *per se* for injury to her profession as an attorney. Defamation *per se* absolves a plaintiff of the requirement to plead special damages. *Kforce, Inc. v. Alden Pers., Inc.*, 288 F. Supp. 2d 513, 516 (S.D.N.Y. 2003). Statements that constitute defamation *per se* with regards to attorneys "include[] those statements which show lack of character or a total disregard of professional ethics, for example, statements that indicate an attorney has been disloyal to the best interest of his client or statements that accuse an attorney of unprofessional conduct." *Wilson v. Tarricone*, No. 12 Civ. 5337 (LTS), 2013 WL 12084504, at *4 (S.D.N.Y. Sept. 26, 2013), *aff'd,* 563 F. App'x 864 (2d Cir. 2014) (citation and internal modifications omitted). Since the alleged defamatory statements concern Grayson's unethical conduct as an attorney and lack of diligence, the Court finds that the statements reasonably affected her professional reputation.

***

Consequently, Defendants' motion to dismiss Grayson's defamation claim is GRANTED in part and DENIED in part. The claim may proceed with respect to the first three allegedly defamatory statements, but not with respect to the statement that Grayson was "unresponsive," which the Court finds is non-actionable opinion.

## 2. Injurious Falsehood

The tort of injurious falsehood "consists of the knowing publication of false matter derogatory to the plaintiff's business of a kind calculated to prevent others from dealing with the business or otherwise interfering with its relations with others, to its detriment." *Kasada, Inc. v. Access Capital, Inc.,* No. 01 Civ. 8893 (GBD), 2004 WL 2903776, at *15 (S.D.N.Y. Dec. 14, 2004) (quoting *Waste Distillation Tech., Inc. v. Blasland & Bouck Engineers, P.C.,* 136 A.D.2d 633, 523 N.Y.S.2d 875, 877 (N.Y. App. Div. 2d Dep't 1988)) (internal citation marks omitted). The elements of an injurious falsehoods claim are: (1) falsity of the alleged statements; (2) publication to a third person; (3) malice; and (4) special damages. *Kasada*, 2004 WL 2903776 at *16 (citation omitted). "The cause of action differs from defamation in that a defamatory statement impugns the basic integrity or creditworthiness of a business while an *injurious falsehood is confined to denigrating the quality of the plaintiff's business's goods or services*." *Berwick v. New World Network Int'l, Ltd.*, 06 Civ. 2641 (JGK), 2007 WL 949767, at *15 (S.D.N.Y. Mar. 28, 2007) (citations and internal quotation marks omitted) (emphasis added); *see also id.* (citing *Cunningham v. Hagedorn,* 72 A.D.2d 702, 422 N.Y.S.2d 70, 74 (N.Y. App. Div. 1st Dep't 1979)); *Angio-Med. Corp. v. Eli Lilly & Co.,* 720 F. Supp. 269, 272-74 (S.D.N.Y. 1989) (characterizing as defamatory claims that impute fraud, dishonesty, or unfitness to a company, and characterizing as injurious falsehood claims that would cause a listener to assume plaintiff's cosmetic skin and hair product did not meet safety and efficacy standards).

Here, Grayson states that the same allegedly defamatory statements also give rise to her injurious falsehood claim.[9] Although it is a close call, the Court finds that the first two statements concerning Grayson's conflict of interest would qualify as injurious falsehoods, but

---

[9] She further avers that Defendants circulated injurious falsehoods to the attorneys at Tuggle Duggins and "other persons," and that they are continuing to do so, but does not indicate what these statements were and thus that claim is deficient.

not the statement concerning her diligence. Clearly, an attorney who is representing a client while laboring under a conflict that has not been waived is ineffective in her representation, thus implicating the quality of her services. In any event, Defendants do not argue that the statements would not qualify as injurious falsehoods.

However, the Court finds that the claim cannot proceed because she does not adequately allege special damages to survive a motion to dismiss. To establish special damages, a plaintiff must plead facts demonstrating that actual losses were caused by the alleged tortious act. *Murphy-Higgs v. Yum Yum Tree, Inc.,* 112 F. App'x 796, 797 (2d Cir. 2004); *In Touch Concepts, Inc. v. Cellco P'ship*, 949 F.Supp.2d 447, 484 n.30 (S.D.N.Y. 2013). She must also plead the amount of special damages with specificity. *See Fashion Boutique v. Fendi USA, Inc.,* 314 F.3d 48, 59 (2d Cir. 2002); *Daniels v. St. Luke's-Roosevelt Hosp. Ctr.*, 02 Civ. 9567 (KNF), 2003 WL 22410623, at *8 (S.D.N.Y. Oct. 21, 2003) (plaintiff's special damages claim based on loss of employment and the corresponding salary, were not sufficiently stated as required by New York law); *Rall v. Hellman*, 284 A.D.2d 113, 114, 726 N.Y.S.2d 629, 632 (N.Y. App. Div. 1st Dep't 2001) ("While costs, such as counsel fees, incurred in avoiding damage to plaintiff's reputation and business may be actionable under an injurious falsehood theory . . . , plaintiff's complaint was nevertheless deficient as he failed to identify his special damages with sufficient particularity").

Grayson claims that Defendants caused her to suffer special damages in the sum of $9,730,000—an amount reached by applying the percentages contained in her contingent fee agreement to the default judgment entered against C-S Aviation—plus statutory interest accruing from July 2010 forward. Am. Compl. ¶ 89. Even taking the Amended Complaint as true, this amount is based wholly on speculation as to what her fee *might* have been if she was not terminated, if Soros and Chatterjee had not prevailed on their summary judgment motion, if TW Airlines obtained the full amount of default judgment as opposed to, for example, settling for a

lesser amount, and if her contingent fee agreement was not further modified. Accordingly, the

Court finds that the alleged special damages are too speculative to allow her injurious falsehood

claim to proceed. However, the Court permits Grayson to replead her injurious falsehood claim.

### 3. Tortious Interference With Contract and Tortious Interference With Prospective Business Advantage

"Under New York law, the elements of tortious interference with contract are (1) the

existence of a valid contract between the plaintiff and a third party; (2) the defendant's

knowledge of the contract; (3) the defendant's intentional procurement of the third-party's

breach of the contract without justification; (4) actual breach of the contract; and (5) damages

resulting therefrom." *See Kirch*, 449 F.3d at 401 (internal quotation marks and citation omitted).

The elements of a claim for tortious interference with prospective economic advantage are (1) a

business relationship with a third party; (2) the defendant's knowledge and intentional

interference with that relationship; (3) that the defendant acted solely out of malice, or used

dishonest, unfair, or improper means; and (4) injury to the business relationship. *See Kirch*, 449

F.3d at 400 (quoting *Carvel Corp. v. Noonan*, 350 F.3d 6, 17 (2d Cir. 2003)).

Defendants assert that the tortious interference claims should be dismissed because they

are merely duplicative of the defamation claim. In *Chao v. Mount Sinai Hospital*, the Second

Circuit observed that "'New York law considers claims sounding in tort to be defamation claims .

. . where those causes of action seek damages only for injury to reputation, [or] *where the entire*

*injury complained of by plaintiff flows from the effect on his reputation*.'" 476 F. App'x 892, 895

(2d Cir. 2012) (emphasis added) (quoting *Jain v. Sec. Indus. & Fin. Mkts. Ass'n*, No. 08 Civ.

6463 (DAB), 2009 WL 3166684, at *9 (S.D.N.Y. Sept. 28, 2009)).[10] There, the court affirmed

---

[10] *Cf. Cohen v. Cowles Media Co.*, 501 U.S. 663, 671 (1991) (noting that the plaintiff was not attempting to use a promissory estoppel cause of action under Minnesota state law "to avoid the strict requirements for establishing a libel or defamation claim" where the plaintiff could not sue for defamation because the information disclosed was true).

dismissal of a tortious interference with contract claim and a tortious interference with prospective business advantage claim on a Rule 12(b)(6) motion because the factual allegations underlying the claim were "virtually identical" to the facts underlying a defamation claim. *Id.* Specifically, both causes of actions were premised on allegations that defamatory statements were made in the course of the defendant hospital's internal investigation into the plaintiff professor's research misconduct. *Id.* at 895. The court further concluded that the harms the professor claimed to have suffered as a result of the non-defamation tort causes of action— including the termination of his employment—all flowed from the effect on his reputation caused by the alleged defamatory statements. *Id.*

Here, Grayson bases her tortious interference claim on the allegations that Defendants made defamatory statements and "foment[ed] discord" between Grayson and her client. Am. Compl. ¶¶ 91-99. Grayson argues that her tortious interference claims are not duplicative of the defamation claim because Defendants induced the Trustee to breach his engagement agreement with Grayson not only by defaming Grayson but also by refusing to work with her. The Amended Complaint insufficiently establishes that Defendants *refused* to work with her. The alleged facts from which she draws this conclusion merely indicate that there was discord between the two parties and that Defendants did not want to work Grayson, which they largely expressed by making the alleged defamatory statements. Accordingly, as in *Chao*, the entire injury pleaded in relation to the tortious interference claims flows from the effect on Plaintiffs' reputation resulting from Defendants' statements.

### 5. Breach of Contract

Grayson further claims that Defendants breached the oral contract that existed between the parties when they (1) unlawfully sought to oust Grayson as TW Airline's special litigation counsel, (2) caused her to be replaced by attorneys who were unfit to familiarize themselves with the Consolidated Actions within the requisite time; (3) unsuccessfully opposed Soros and

Chatterjee's summary judgment motion in the Consolidated Actions; (4) interfered with and opposed Grayson's efforts to obtain compensation from the TW Airlines bankruptcy estate; (5) attempted to unwind her partial settlement with the Trustee; and (6) filed the 2016 Action which relies heavily on Grayson's work while maintaining that she is not entitled to any compensation from its prospective proceeds. Am. Compl. ¶ 103. Defendants argue that Grayson fails to sufficiently allege the existence of the oral contract between the parties.

In order to survive motion to dismiss on a breach of contract claim, a plaintiff must allege the existence of a contract, performance of that contract by one party, breach by the other party, and resulting damages. *See Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994). Importantly, a plaintiff must set forth the material terms of the agreement, including the particular terms that were allegedly breached by the defendants. *See, e.g., Childers v. New York and Presbyterian Hosp.*, 36 F.Supp.3d 292, 312-13 (S.D.N.Y.2014) (dismissing breach of contract claim because plaintiff did not allege in non-conclusory language the essential terms of the purported contract, including those terms upon which liability was predicated); *Shtofmakher v. David*, No. 14 Civ. 6934 (AT), 2015 WL 5148832, at *8 (S.D.N.Y. Aug. 17, 2015) (same). "Under New York law, 'before the power of law can be invoked to enforce a promise, it must be sufficiently certain and specific so that what was promised can be ascertained.'" *Sang Lan v. Time Warner, Inc.*, No. 11 Civ. 2870 (AT), 2014 WL 764250, at *2 (S.D.N.Y. Feb. 25, 2014) (quoting *Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 109 (1981)).

Grayson plainly fails to set forth the material terms of the agreement with the requisite specificity, preventing the Court from ascertaining what was promised and whether Defendants' alleged actions breached such promises. She only provides that the parties entered into an agreement to "work together" to "cooperatively [and] successfully prosecute their parallel veil piercing cases, and each benefit from their respective contingency fee." Am. Compl. ¶¶ 28, 30 101. She does not indicate what such cooperation entailed—what tasks each party agreed to

24

perform—what the parties understood to be "successful prosecution," and whether the parties

had particular obligations to ensure that they received compensation from their respective clients

beyond seeking successful resolution of the cases. *See e.g. In re Adelphia Commc'ns Corp. Sec.*

*& Derivative Litig.*, No. 03 MDL 1529 (JMF), 2013 WL 6838899, at *9 (S.D.N.Y. Dec. 27,

2013) (dismissing a breach of contract claim where it was alleged that a party was obligated to

make appropriate accounting and disclosures without specifying the meaning of "appropriate" or

the manner of disclosure required).  Thus, the Amended Complaint's allegations are too vague to

enforce.

      Grayson suggests that she can further amend her pleadings to allege the following terms

of the oral contract:  (1) the parties would contribute effort based on their respective areas of

knowledge, expertise, and skill, (2) the parties would do their fair share of the work to produce

the best possible product and to avoid duplication, and (3) the parties would split joint expenses.

Opp. Mot. to Dismiss at 13.  However, it is unclear how Defendants' alleged actions would

constitute breach of these terms.  Grayson does not claim that Defendants failed to fairly

contribute effort or pay for their half of the joint expenses.  Instead, she bases her breach of

contract claim on Defendants' alleged machinations in causing her termination and replacement,

dismissal of the Consolidated Actions on summary judgment, and interference with Grayson's

efforts to obtain compensation from the TW Airlines bankruptcy estate.  None of these additional

terms prevent Defendants from taking any of those actions.

      Furthermore, even if the Court were to find that Grayson adequately pled the essential

terms of the oral contract, it is unenforceable under the Statute of Frauds.  Under New York's

Statute of Frauds, if a contract by its terms cannot be performed within one year of its

consummation, it must be made in writing.  N.Y. Gen. Obl. Law § 5-701(a)(1).  Contracts that

have indefinite durations are considered incapable of performance within a year and fall within

the ambit of the Statute of Frauds.  *See In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405, 419

(S.D.N.Y. 2007), *aff'd sub nom. S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98 (2d Cir. 2009) (citing *Computech Intern., Inc. v. Compaq Computer Corp.*, No. 02-CV-2628, 2002 WL 31398933, at *3 (S.D.N.Y. Oct. 24, 2002)).

Grayson argues that the Statute of Frauds is inapplicable because the Consolidated Actions could have concluded within a year of the contract's formation, at which point the parties would be relieved of their contractual obligations. The Court disagrees. Although the exact terms of the oral contract are unclear, Grayson appears to suggest that Defendants have an on-going contractual obligation to *forever* refrain from interfering with her compensation from the TW Airlines bankruptcy estate for the Consolidated Actions and any subsequent action that uses her work product, such as the 2016 Action. This suggests that at least some of the contractual performance obligations have indefinite durations that extend past the conclusion of the Consolidated Actions, which theoretically (though highly improbably) might have been concluded within one year. Hence, the purported contract must have been made in writing.[11]

Grayson also asserts that her partial performance removes the contract from the purview of the Statute of Frauds. This argument fails. While partial performance is an exception to Statute of Frauds under New York General Obligations Law Section 5-703 for contracts concerning real property, it does not apply to Section 5-701 which governs the alleged contract here. *Duckett v. Hadley Engelhard, Esq.*, No. 15 Civ. 8645 (RJS), 2017 WL 512455, at *3 (S.D.N.Y. Feb. 6, 2017) (noting that the New York Court of appeals has "firmly stated" that there is no part performance exception to Section 5-701(a)(1) of New York's statute of frauds); *Castellotti v. Free*, 138 A.D.3d 198, 203 (1st Dep't 2016) ("the partial performance exception applies only to the statute of frauds provision in [N.Y. Gen, Oblig. L.] § 5-703, and has not been

---

[11] Although Grayson claims that the parties' oral agreement was partly evidenced by the written Joint Prosecution, Common Interest, and Confidentiality Agreement, Grayson does not argue that Defendants breached their confidentiality obligations arising from that written agreement. *See* Ressler Decl. Ex. 2.

extended to § 5-701"); *c.f. SSP Capital Partners, LLC v. Mandala, LLC*, 715 F. Supp. 2d 443, 448 (S.D.N.Y. 2009), *aff'd sub nom. SSP Capital Partners, LLP v. Mandala, LLC*, 402 F. App'x 572 (2d Cir. 2010) (finding that part performance is a rejoinder to a Statute of Fraud defense under Section 5-703). Accordingly, the Court dismisses Grayson's breach of contract claim with prejudice.

### 6. *Quantum Meruit*

In order to recover in *quantum meruit* under New York law, "a claimant must establish '(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services.'" *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (quoting *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 69 (2d Cir. 2000)). To succeed on a *quantum meruit* claim, Grayson must allege that she expected compensation from the Defendants, not from a third party. *Kaplan v. Vincent*, 937 F. Supp. 307, 318 (S.D.N.Y. 1996). However, the Amended Complaint is devoid of allegations that Grayson expected any compensation from Defendants for her work on the Consolidated Actions as opposed to from the TW Airlines bankruptcy estate. Nothing in her allegations suggest that her purported oral argument with Defendants transformed their relationship vis-à-vis their respective clients. To the extent Grayson believes she is entitled to compensation for her work either in the Consolidated Actions or in the 2016 Action, she must look to her client, not Defendants. The Court thus dismisses Grayson's *quantum meruit* claim with prejudice.[12]

---

[12] The claim is defective for the additional reason that Grayson has not alleged the reasonable value for her services. Grayson argues that her services on the coordinated veil piercing cases benefited Defendants by (1) freeing up their time to work on their other matters, and (2) allowing them to foreseeably recover in the 2016 Action, which allegedly utilizes the work she did in the Consolidated Actions. However, this argument is unaccompanied by allegations concerning the reasonable value of such current or prospective benefit. This deficiency alone is enough to defeat her claim at this stage. *See Hajny v. Best Roofing of New Jersey, Inc.*, No. 11 Civ. 00173 (LLS), 2011 WL 2493737, at *7 (S.D.N.Y. June 22, 2011) (dismissing *quantum meruit* claim where "[p]laintiffs d[id] not allege the reasonable value of the services they rendered to defendants"); *Broughel v. Battery Conservancy*, No. 07 Civ. 7755 (GBD), 2009 WL 928280, at *8 (S.D.N.Y. Mar. 30, 2009) (noting that "a *quantum meruit* claim will be dismissed

### 7. Unjust Enrichment

To state a claim for unjust enrichment under New York law, a plaintiff must plead facts showing that "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 55 (2d Cir. 2011) (citations and internal quotation marks omitted). It is unclear from the Amended Complaint how Defendants have been unjustly enriched at Grayson's expense. As Grayson alleges, there was no recovery under the Consolidated Cases. The 2016 Action is still pending. Grayson states that recovery under the 2016 Action is "foreseeable," but there is nothing in the Amended Complaint that supports this assertion beyond mere conjecture, and she does not allege how much of this foreseeable recovery would be a result of her contribution. Moreover, while Defendants may have benefited from having shared the workload with Grayson in the Consolidated Actions because it allowed them to spend more time on other matters, Grayson conceivably received this benefit as well since she admits that Defendants took a leading role in electronic discovery. Am. Compl. ¶ 43. If they both received the same benefit from their arrangement, it cannot be said that one party benefited at the *expense* of another. In addition, and for the same reasons discussed above, Grayson must look to her client's bankruptcy estate for any compensation she believes she is entitled to. Accordingly, the Court also dismisses Grayson's unjust enrichment claim with prejudice.

### 8. Conversion

To withstand a motion to dismiss on a conversion claim, Grayson must allege "(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an

---

where the complaint contains nothing more than undefined and conclusory statements regarding the actual benefit plaintiff conferred on the defendant").

unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *DeAngelis v. Corzine*, 17 F. Supp. 3d 270, 282 (S.D.N.Y. 2014) (citation omitted). Where a defendant's "original possession [of the property] is lawful, a conversion does not occur until the defendant refuses to return the property after demand or until he sooner disposes of the property." *Schwartz v. Capital Liquidators, Inc.,* 984 F.2d 53, 54 (2d Cir. 1993) (quoting *Johnson v. Gumer,* 94 A.D.2d 955, 464 N.Y.S.2d 318, 319 (4th Dep't 1983)); *see also Camp Summit of Summitville, Inc. v. Visinski*, No. 06 Civ. 4994 (CM) (GAY), 2007 WL 1152894, at *10 n.2 (S.D.N.Y. Apr. 16, 2007) (noting that demand for return of the property subject to conversion is required to state a claim for conversion where the plaintiff initially authorized defendant to use the property).

Grayson alleges Werther committed conversion by taking and failing to return her original *Jet Star* transcripts. However, Grayson concedes that Werther's original possession of the *Jet Star* transcripts was both authorized by her and permitted through a court order. In fact, Grayson states that it was her idea for Werther to procure the transcripts from her through subpoenas, and that she further aided Werther in defeating Soros' attempt to quash the subpoenas. Am. Comp. ¶ 35. Thus, in order to survive a motion to dismiss, Grayson must allege that she made a valid demand for the return of the transcripts and that Werther refused this demand. She fails to do so. Instead, she vaguely asserts that the transcripts were released upon an "express understanding" that they would be promptly copied and returned, but that Werther failed to return them. Am. Comp. ¶¶ 35, 115. This allegation is insufficient to make out a claim for conversion because it fails to establish whether and when a demand for the property was made and refused. *See Marvel Worldwide, Inc. v. Kirby*, 756 F. Supp. 2d 461, 469 (S.D.N.Y. 2010) (noting that a court must analyze the actions and the words of a party who received a demand for return to determine whether and when the demand was refused).

Moreover, conduct that would otherwise be conversion is generally permitted when it is done pursuant to a valid court order, unless the party procured the order through intentional misrepresentation.[13] *Polanco v. NCO Portfolio Mgmt., Inc.*, 23 F. Supp. 3d 363, 371 (S.D.N.Y. 2014) (citing *Calamia v. City of New York,* 879 F.2d 1025, 1031 (2d Cir. 1989)). There is no allegation that the subpoenas themselves contained any limitations on Werther's retention of the transcripts. In addition, the Amended Complaint alleges that Defendants' continued retention of the transcripts was permitted by court order as well. Am. Compl. ¶¶ 74-75. Accordingly, to the extent Grayson believes she is entitled to the prompt return of the documents, the appropriate avenue for relief is an application to Judge Keenan, pursuant to whose order Werther is holding them. This claim is dismissed with prejudice.

### 9. Trespass to Chattel

Grayson's claim of trespass to chattel is also based on Werther's alleged retention of the *Jet Star* transcripts. A trespass to chattel occurs when a party intentionally, and without justification or consent, physically interferes with the use and enjoyment of personal property in another's possession, and causes harm such as depriving the use of the chattel from its rightful possessor for a substantial time. *Bose v. Interclick, Inc.*, No. 10 Civ. 9183 (DAB), 2011 WL 4343517, at *9 (S.D.N.Y. Aug. 17, 2011). Thus, trespass to chattel requires an allegation that a party acted with intent to invade another's chattel. *FTA Mkt. Inc.*, 2012 WL 383945, at *6 (S.D.N.Y. Feb. 1, 2012) (citing *Phillips v. Sun Oil Co.,* 307 N.Y. 328, 331, 121 N.E.2d 249 (1954)). As discussed above, Werther was authorized to procure the *Jet Star* transcripts pursuant to subpoenas, which provides her conduct with sufficient justification. *See Dockery v. Tucker*, No. 97 Civ. 3584 (ARR) (RLM), 2008 WL 2673307, at *11 (E.D.N.Y. June 26, 2008) (finding that damage to plaintiff's chattel was authorized because the defendants conducted a lawful

---

[13] Grayson does not argue that the subpoenas were obtained improperly, nor can she. Indeed, Grayson alleges that she was instrumental in advocating for the subpoenas in opposition to a motion to quash.

search under the Fourth Amendment). Grayson does not allege that the express understanding between Werther and Grayson either modifies or limits the subpoena. Thus, as with the conversion claim, if Grayson has a claim for the return of the transcripts, it is a claim appropriately addressed to Judge Keenan. This claim is dismissed with prejudice.

### 10. Prima Facie Tort

To state a claim for *prima facie* tort under New York law, a plaintiff must plead the following elements: "(1) intentional infliction of harm; (2) resulting in special damages; (3) without excuse or justification; (4) by an act that would otherwise be lawful." *Twin Labs., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 571 (2d Cir. 1990). Defendants argue that this claim must be dismissed for failure to plead special damages. The Court agrees.

Grayson argues in her opposition to the instant motion that the *prima facie* tort claim is based on Defendants' efforts to unwind her $90,000 interim fee settlement with the Trustee and requests leave to allege her damages with greater particularity. Defendants argue that her claim would still fail as she is unable to allege the necessary intent. "To prevail on a *prima facie* tort claim, a plaintiff must plead that the *only* motivation for the act was 'disinterested malevolence.'" *Margrabe v. Sexter & Warmflash, P.C.*, 353 F. App'x 547, 549 (2d Cir. 2009). Other motives such as profit, self-interest or business advantage will defeat a *prima facie* tort claim. *Id.* (citation omitted). The Court permits Grayson to amend her *prima facie* tort claim to the extent that she is able to sufficiently plead all the elements, including that Defendants' only motivation was disinterested malevolence.

### B. Rule 11 Sanctions

By a separate motion, Defendants ask the Court to sanction Grayson under Rule 11 for making false and inadequately investigated allegations in her Complaint, which she largely repeats in the Amended Complaint and declaration opposing the sanctions motion. Rule 11 states that the court may impose sanctions "[i]f, after notice and a reasonable opportunity to

31

respond, the court determines that Rule 11(b) has been violated . . . ."  Fed. R. Civ. P. 11(c)(1);

*see also Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012)

(stating that "sanctions under Rule 11 are discretionary, not mandatory").  The Second Circuit

has made clear that Rule 11 sanctions should be granted with caution, applied only when "a

particular allegation is utterly lacking in support."  *In re Highgate Equities, Ltd.*, 279 F.3d 148,

154 (2d Cir. 2002) (quoting *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (S.D.N.Y. 1996)); *Kiobel*

*v. Milson*, 592 F.3d 78, 81 (2d Cir. 2010); (*see also Storey v. Cello Holdings, L.L.C.*, 347 F.3d

370, 387 (2d Cir. 2003) ("When reviewing Rule 11 sanctions, however, we nevertheless need to

ensure that any [sanctions] decision is made with restraint.") (internal quotation marks and

citation omitted)).

      "A pleading, motion or other paper violates Rule 11 either when it has been interposed

for any improper purpose, or where, after reasonable inquiry, a competent attorney could not

form a reasonable belief that the pleading is well grounded in fact and is warranted by existing

law or good faith argument for the extension, modification or reversal of existing law."  *Robledo*

*v. Bond No. 9*, 965 F. Supp. 2d 470, 477-78 (S.D.N.Y. 2013) (quoting *Kropelnicki v. Siegel*, 290

F.3d 118, 131 (2d Cir. 2002) (internal citations and quotations omitted)).  When deciding whether

to grant Rule 11 sanctions, the Court applies an objective standard of reasonableness, *W.K.*

*Webster & Co. v. Am. President Lines, Ltd.*, 32 F.3d 665, 670 (2d Cir. 1994), and looks to, among

other factors, whether the party acted in bad faith; whether they relied on a direct falsehood; and

whether the claim was "utterly lacking in support." *New V & J Produce Corp. v. NYCCaterers*

*Inc.*, No. 13 Civ. 4861 (ER), 2014 WL 5026157, at *7 (S.D.N.Y. Sept. 29, 2014).  All doubts

must be resolved in favor of the signer of the pleading.  *Rodick v. City of Schenectady,* 1 F.3d

1341, 1350 (2d Cir. 1993).

      Grayson argues that Rule 11 sanctions are not proper at this stage of the litigation.  She is

correct that resolution of a sanctions motion concerning pleadings is generally proper after

discovery since it would otherwise end-run the principle that courts must take the plaintiff's pleading as true on a motion to dismiss. *Luv N' Care, Ltd. v. Shiboleth LLP*, No. 16-CV-3179 (AJN), 2017 WL 3671039, at *13 (S.D.N.Y. Aug. 8, 2017). However, courts may consider motions for sanctions after the case is dismissed pursuant to a motion to dismiss. *See e.g. Shetiwy v. Midland Credit Mgmt.*, No. 12 Civ. 7068 (SAS), 2014 WL 3739512, at *2-3 (S.D.N.Y. July 29, 2014) (imposing Rule 11 sanctions for plaintiffs' failure to ensure factual bases for their allegations after having granted the defendants' motion to dismiss); *Freeman v. Bianco*, No. 02 Civ. 7525 (GEL), 2003 WL 179777, at *1 (S.D.N.Y. Jan. 24, 2003) (ordering plaintiff to show cause why sanctions should not be granted pursuant to Rule 11 for bringing a frivolous action after granting defendant's motion to dismiss); *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407, 413 n.3 (S.D.N.Y. 2003) (noting that a party may promptly file a Rule 11 sanctions motions for submitting a false complaint, but that courts normally will determine the issue at the end of the litigation). Since the Court found that Grayson adequately pleaded defamation as to three of the four allegedly defamatory statements, it finds that consideration of the Rule 11 sanctions motion is premature at this juncture.

## III.    CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Specifically, Grayson's defamation claim is allowed to proceed with respect to three of the four allegedly defamatory statements. Grayson may also amend the injurious falsehood and *prima facie* tort claims. If Grayson chooses to file a Second Amended Complaint, she must do so by October 10, 2017.

Defendants' motion for sanctions is DENIED without prejudice.

The Clerk of Court is respectfully directed to terminate the motions, Docs. 48, 100, 103, 121.


It is SO ORDERED.

Dated:     September 18, 2017
           New York, New York

                                        Edgardo Ramos, U.S.D.J.