UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

VIOLET ELIZABETH GRAYSON,

Plaintiff,

v.

RESSLER & RESSLER, ELLEN WERTHER, and BRUCE RESSLER,

Defendants.

---------------------------------------------------------x

**Case No. 1:15-cv-08740 (ER)**

**ECF Case**

**ORAL ARGUMENT REQUESTED**

**DEFENDANTS' STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE OF FACT TO BE TRIED**

Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Court for the Southern District of New York, Defendants, Ressler & Ressler, Bruce Ressler and Ellen Werther (together, "Defendants") respectfully submit in support of their motion for summary judgment the following statement of material facts as to which there is no genuine issue to be tried. A copy of the record evidence on which Defendants rely to support each of the following undisputed material facts is submitted herewith as exhibits to the Defendants' Attorney's Declaration, dated December 20, 2017, filed in support of Defendants' motion for summary judgment (the "Defendants' Dec.), including the Declaration of Robert M. Mayer, dated November 1, 2017 ("Mayer Dec."), the Declaration of Bruce J. Ressler, dated December 20, 2017 ("Ressler Dec."), and the Declaration of Ellen R. Werther, dated December 20, 2017 ("Werther Dec."), attached as Exhibits 6-8 to the Defendants' Dec.

**The Parties:**

1. The Defendant Ressler & Ressler is a law firm located in New York, NY.

(**Defendants' Dec. Ex. 5** (Answer ¶3).)

2. Defendants Bruce Ressler and Ellen Werther are members of Ressler & Ressler.

(**Defendants' Dec. Ex. 5** (Answer ¶¶4-5).)

3. The Plaintiff, Violet Elizabeth Grayson ("Grayson"), is an individual licensed attorney.

(**Defendants' Dec. Ex. 5** (Answer ¶2).)

**Procedural History of the Instant Action:**

4. Grayson filed the First Amended Complaint in the instant action on April 21, 2017.

(**Defendants' Dec. Ex. 1** (First Amended Complaint).)

5. The First Amended Complaint alleged ten causes of action: defamation (Count I), injurious falsehood (Count II), tortious interference with contract (Count III), tortious interference with prospective business advantage (Count IV), breach of contract (Count V), quantum meruit (Count VI), unjust enrichment (Count VII), conversion (Count VIII), trespass to chattel (Count IX), and prima facie tort (Count X).

(**Defendants' Dec. Ex. 1** (First Amended Complaint).)

6. Defendants filed a Motion to Dismiss the First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), and a motion for sanctions pursuant to Fed. R. Civ. P. 11 on June 1, 2017.

(**Defendants' Dec. Ex. 2** (Motion to Dismiss).)

7. By Opinion and Order of September 19, 2017 ("Opinion and Order"), the Court: dismissed Count III through Count IX of the First Amended Complaint, with prejudice; dismissed

Count II and Count X, with leave to amend; and allowed the defamation claim set forth in Count I to proceed with respect to three alleged defamatory statements identified by the Court that were allegedly made at a meeting held on August 15, 2013 (the "August 15, 2013 Meeting").

(**Defendants' Dec. Ex. 3** (Opinion and Order at 17-18, 33).)

8. In the Opinion and Order, the Court found that consideration of Defendants' Rule 11 motion was premature at that juncture.

(**Defendants' Dec. Ex. 3** (Opinion & Order at 33).)

9. In the Opinion and Order, the Court directed that, if Grayson chooses to file a Second Amended Complaint, she must do so by October 10, 2017.

(**Defendants' Dec. Ex. 3** (Opinion & Order at 33).)

10. By Letter Motion, dated October 4, 2017 ("Letter Motion"), Grayson requested the Court to modify the language of the Opinion and Order; advised the Court of her decision not to amend Count II and Count X of the First Amended Complaint by the date fixed by the Court; and requested the Court to reconsider its dismissal of Count III and Count IV of the First Amended Complaint.

(**Defendants' Dec. Ex. 4** (Grayson letter, dated October 4, 2017).)

11. By Memo Endorsed Order, dated October 4, 2017 ("Memo Endorsed Order"), the Court denied Grayson's request to reconsider the Opinion and Order; denied Grayson's request to modify the language of the Opinion and Order.

(**Defendants' Dec. Ex. 4** (Memo Endorsed Order, dated October 4, 2017).)

12. Defendants filed an Answer to the First Amended Complaint on October 24, 2017.

(**Defendants' Dec. Ex. 5** (Defendants' Answer to First Amended Complaint).)

**The New York Veil Piercing Actions:**

13. Ressler & Ressler represented Coreolis Holdings, Inc. and its wholly-owned subsidiary, TradeWinds Holdings, Inc. (together, "Coreolis") in a veil piercing action brought by Coreolis against George Soros ("Soros") and Purnendu Chatterjee ("Chatterjee") in the United States District Court for the Southern District of New York, *Coreolis Holdings, Inc. v. Soros*, No. 10-cv-8175 (JFK)(S.D.N.Y.) (the "Coreolis Veil Piercing Action").

> (**Defendants' Dec. Ex. 18** (Coreolis Complaint filed by Ressler & Ressler in the Coreolis Veil Piercing Action on 10/28/10), **Ex. 22** (Coreolis First Amended Complaint filed by Ressler & Ressler in the Coreolis Veil Piercing Action on 8/8/13).)

14. For a period of time, Grayson represented the Trustee for TradeWinds Airlines, Inc. ("TradeWinds Airlines") in a veil piercing action brought by TradeWinds Airlines against Soros and Chatterjee in the United States District Court for the Southern District of New York, *TradeWinds Airlines, Inc. v. Soros*, No. 08-cv-5901 (S.D.N.Y.) (the "TradeWinds Veil Piercing Action").

> (**Defendants' Dec. Ex. 9** (TradeWinds Airlines First Amended Complaint filed by Grayson in the TradeWinds Veil Piercing Action on 9/28/08), **Ex. 12** (TradeWinds Airlines Second Amended Complaint filed by Grayson in the TradeWinds Veil Piercing Action on 3/10/11), **Ex. 15** (TradeWinds Third Amended Complaint filed by Grayson in the TradeWinds Veil Piercing Action on 8/8/13).)

15. The TradeWinds Veil Piercing Action and the Coreolis Veil Piercing Action were procedurally consolidated by United States District Judge Keenan.

(**Defendants' Dec. Ex. 5** (Answer ¶27), **Ex. 7** (Ressler Dec. ¶12), **Ex. 8** (Werther Dec. ¶12).

**The Affirmative Defenses Raised by Soros and Chatterjee in the Veil Piercing Actions:**

16. TradeWinds Airlines filed a First Amended Complaint, dated September 28, 2008, in the TradeWinds Veil Piercing Action on October 3, 2008.

(**Defendants' Dec. Ex. 9** (TradeWinds First Amended Complaint).)

17. TradeWinds Airlines filed a Second Amended Complaint in the TradeWinds Veil Piercing Action on March 10, 2011.

(**Defendants' Dec. Ex. 12** (TradeWinds Second Amended Complaint).)

18. TradeWinds Airlines filed a Third Amended Complaint in the TradeWinds Veil Piercing Action on August 8, 2013.

(**Defendants' Dec. Ex. 15** (TradeWinds Third Amended Complaint).)

19. Soros filed an Answer, dated January 8, 2009, to the TradeWinds First Amended Complaint on January 8, 2009.

(**Defendants' Dec. Ex. 10** (Soros Answer to TradeWinds First Amended Complaint).)

20. Soros filed an Answer, dated April 3, 2012, to the TradeWinds Second Amended Complaint on April 3, 2012.

(**Defendants' Dec. Ex. 13** (Soros Answer to TradeWinds Second Amended Complaint).)

21. Soros filed an Answer, dated August 22, 2013, to the TradeWinds Third Amended Complaint on August 22, 2013.

(**Defendants' Dec. Ex. 16** (Soros Answer to TradeWinds Third Amended Complaint).)

22. Chatterjee filed an Answer, dated January 8, 2009, to the TradeWinds First Amended Complaint on January 8, 2009.

(**Defendants' Dec. Ex. 11** (Chatterjee Answer to TradeWinds First Amended Complaint).)

23. Chatterjee filed an Answer, dated April 3, 3012, to the TradeWinds Second Amended Complaint on April 4, 2012.

(**Defendants' Dec. Ex. 14** (Chatterjee Answer to TradeWinds Second Amended Complaint).)

24. Chatterjee filed an Answer, dated August 22, 2013, to the TradeWinds Third Amended Complaint on August 22, 2013.

(**Defendants' Dec. Ex. 17** (Chatterjee Answer to TradeWinds Third Amended Complaint).)

25. In each of the Answers filed by Soros in the TradeWinds Veil Piercing Action, Soros asserted the following affirmative defense to TradeWinds Airlines' veil piercing claim, which affirmative defense was pending at the time of the August 15, 2013 Meeting:

> Plaintiff's [TradeWinds Airlines] claim is barred because it is based on information provided to plaintiff [TradeWinds Airlines] by its counsel [Grayson] in violation of a confidentiality order entered by the Court in the Jet Star Litigation and in violation of a settlement agreement entered into by plaintiff's counsel [Grayson] in connection with the Jet Star Litigation.
>
> (**Defendants' Dec. Ex. 10** (Soros Answer to TradeWinds Airlines First Amended Complaint ¶32), **Ex. 13** (Soros Answer to TradeWinds Airlines Second Amended Complaint ¶34), **Ex. 16** (Soros Answer to TradeWinds Airlines Third Amended Complaint ¶38), **Ex.** 7 (Ressler Dec. ¶10 ("These affirmative defenses were pending at the time of the August 15, 2013 Meeting."), **Ex. 8** (Werther Dec. ¶10).)

26. In each of the Answers filed by Chatterjee in the TradeWinds Veil Piercing Action, Chatterjee asserted the following affirmative defense to TradeWinds Airlines' veil piercing claim, which affirmative defense was pending at the time of the August 15, 2013 Meeting:

> Plaintiff's [TradeWinds Airlines] claim is barred because it is based on information provided to plaintiff [TradeWinds Airlines] by its counsel [Grayson] in violation of a confidentiality order entered by the Court in the Jet Star Litigation and in

violation of a settlement agreement entered into by plaintiff's counsel [Grayson] in connection with the Jet Star Litigation.

(**Defendants' Dec. Ex. 11** (Chatterjee Answer to TradeWinds Airlines First Amended Complaint, Tenth Affirmative Defense at 6), **Ex. 14** (Chatterjee Answer to TradeWinds Airlines Second Amended Complaint Ninth Affirmative Defense, at 5), **Ex. 18** (Chatterjee Answer to TradeWinds Airlines Third Amended Complaint Eleventh Affirmative Defense, at 6), **Ex. 7** (Ressler Dec. ¶10 ("These affirmative defenses were pending at the time of the August 15, 2013 Meeting."), **Ex. 8** Werther Dec. ¶10).)

27. Coreolis filed a Complaint, dated October 28, 2010, in the Coreolis Veil Piercing Action on October 28, 2010.

(**Defendants' Dec. Ex. 18** (Coreolis Complaint).)

28. Coreolis filed a First Amended Complaint, dated August 8, 2013, in the Coreolis Veil Piercing Action on August 8, 2013.

(**Defendants' Dec. Ex. 22** (Coreolis First Amended Complaint).)

29. Soros filed an Answer, dated April 3, 2012, to the Coreolis Complaint in the Coreolis Veil Piercing Action on April 3, 2012.

(**Defendants' Dec. Ex. 19** (Soros Answer to Coreolis Complaint).)

30. Soros filed an Amended Answer, dated April 3, 2012, to the Coreolis Complaint in the Coreolis Veil Piercing Action on April 3, 2012.

(**Defendants' Dec. Ex. 20** (Soros Amended Answer to Coreolis Second Amended Complaint).)

31. Soros filed an Answer, dated August 22, 2013, to the Coreolis First Amended Complaint in the Coreolis Veil Piercing Action August 22, 2013.

(**Defendants' Dec. Ex. 23** (Soros Answer to Coreolis First Amended Complaint).)

32. Chatterjee filed an Answer, dated April 3, 2012, to the Coreolis Complaint in the Coreolis Veil Piercing Action on April 5, 2012.

(**Defendants' Dec. Ex. 21** (Chatterjee Answer to Coreolis Complaint).)

33. Chatterjee filed an Answer, dated August 22, 2013, to the Coreolis First Amended Complaint in Coreolis Veil Piercing Action on August 22, 2013.

(**Defendants' Dec. Ex. 24** (Chatterjee Answer to Coreolis First Amended Complaint).)

34. In each of the Answers filed by Soros in the Coreolis Veil Piercing Action, Soros asserted the following affirmative defense to Coreolis' veil piercing claims, which affirmative defense was pending at the time of the August 15, 2013 Meeting:

> Plaintiff's [Coreolis'] claim is barred because it is based on information provided to plaintiff [Coreolis] by TradeWinds counsel [Grayson] in violation of a confidentiality order entered by the Court in the Jet Star Litigation and in violation of a settlement agreement entered into by TradeWinds' counsel [Grayson] in connection with the Jet Star Litigation.
>
> (**Defendants' Dec. Ex. 19** (Soros Answer to Coreolis Complaint ¶36), **Ex. 20** (Soros Amended Answer to Coreolis Complaint ¶36), Ex. 23 (Soros Answer to Coreolis First Amended Complaint ¶40), **Ex. 7** (Ressler Dec. ¶11 ("These affirmative defenses were pending at the time of the August 15, 2013 Meeting), **Ex. 8** (Werther Dec. ¶11).)

35. In each of the Answers filed by Chatterjee in the Coreolis Veil Piercing Action, Chatterjee asserted the following affirmative defense to Coreolis' veil piercing claims, which affirmative defense was pending at the time of the August 15, 2013 Meeting:

> Plaintiff's [Coreolis'] claim is barred because it is based on information provided to plaintiff [Coreolis] by TradeWinds counsel [Grayson] in violation of a confidentiality order entered by the Court in the Jet Star Litigation and in violation of a settlement agreement entered into by TradeWinds' counsel [Grayson] in connection with the Jet Star Litigation.
>
> (**Defendants' Dec. Ex. 21** (Chatterjee Answer to Coreolis Complaint, Ninth Affirmative Defense at 8), **Ex. 24** (Chatterjee Answer to Coreolis First Amended Complaint, Eleventh Affirmative Defense at 7), **Ex. 7 (**Ressler Dec. ¶11 ("These

affirmative defenses were pending at the time of the August 15, 2013 Meeting), **Ex.8** (Werther Dec. ¶11).)

36. Soros filed a motion in the TradeWinds Veil Piercing Action, dated February 2, 2009, seeking to disqualify Grayson as TradeWinds Airlines' counsel based on, *inter alia*, her alleged breach of the confidentiality order and settlement agreement entered in the Jet Star Litigation.

(**Defendants' Dec. Ex. 25** (Notice of Motion to disqualify Grayson filed by Soros in the TradeWinds Veil Piercing Action on 2/2/09).)

37. On May 12, 2009, United States District Judge Keenan entered an Opinion & Order in the TradeWinds Veil Piercing Case ("Keenan 5/12/09 Opinion & Order"), in which Judge Keenan found, *inter alia*, that Grayson had plainly violated her confidentiality obligations under a Settlement and Confidentiality Agreement ("Jet Star Settlement Agreement") entered into by Grayson in an action brought by Jet Star Enterprises against Soros and Chatterjee in the United States District Court for the Southern District of New York (the "Jet Star Litigation").

(**Defendants' Dec. Ex. 26** (Keenan Opinion & Order of 5/12/09 at 16-17 ("In the Settlement Agreement, Grayson promised to keep confidential "the existence, provisions and substance of [the] Agreement, and the claims for relief sought against Mr. Soros ... and the bases or asserted bases therefore." The original and amended complaints she filed in this [TradeWinds Airlines] case recite the fact that "Jet Star Enterprises brought suit in the Southern District seeking to, *inter alia,* pierce the corporate veil of C–S [Aviation] to reach defendants Soros and Chatterjee." This disclosure plainly violates her [Grayson's] confidentiality obligations under the Settlement Agreement. In addition, because the veil-piercing claim here is premised upon the same factual allegations at issue in *Jet Star II,* the complaint discloses the "bases or the asserted bases" of the *Jet Star II* claim, in violation of the Settlement Agreement.")).)

38. In the Memo Endorsed Order of October 4, 2017, this Court found that Judge Keenan's findings in his Opinion & Order May 12, 2009, "may be fairly characterized as that Grayson was conflicted in her representation of TradeWinds Airlines, Inc."

> (**Defendants' Dec. Ex. 4** (Memo Endorsed Order of 10/4/17 ("Judge Keenan found that during Grayson's representation of Tradewinds Airlines Inc., she "plainly violat[ed] her confidentiality obligations under the [Jet Star] Settlement Agreement.... While the Court does not comment on the truth of this assertion at this stage of the litigation, it finds that the assertion may be failure characterized as that Grayson was conflicted in her representation of TradeWinds Airlines, Inc.")).)

39. In the Opinion & Order of May 12, 2009, Judge Keenan also found that, under the Jet Star Settlement Agreement, Grayson would be personally liable to Soros for any future breach of her confidentiality obligations under the Jet Star Settlement Agreement and required to disgorge any settlement funds she received.

> (**Defendants' Dec. Ex. 2** (Keenan Opinion & Order of 5/12/09 at 25("But even assuming that Grayson were to breach her confidentiality obligations, the remedy specified in the Settlement Agreement is disgorgement of the settlement funds she received, not disqualification.")).)

40. In the Opinion & Order of May 12, 2009, Judge Keenan denied Soros' motion to disqualify Grayson for the reasons stated therein.

(**Defendants' Dec. Ex. 27** (Keenan Opinion & Order of 5/12/09).)

41. By Memorandum Opinion and Order dated May 20, 2009, Judge Keenan directed that certain documents that had been previously filed under seal in connection with Soros' motion to disqualify Grayson be unsealed.

(**Defendants' Dec. Ex. 27** (Keenan Opinion & Order of 5/20/09).)

42. Among the documents unsealed pursuant to Judge Keenan's May 20, 2009 Order was Grayson's sworn declaration, dated March 5, 2009, in which Grayson stated that, at no time prior to or after her engagement as special litigation counsel for TradeWinds Airlines, did she disclose her obligations under the Jet Star Settlement Agreement to TradeWinds Airlines or the Trustee ("Grayson Declaration").

> (**Defendants' Dec. Ex. 28** (Grayson Declaration ¶¶17-18 ("At no time did I divulge the contents of the [Jet Star] Settlement Agreement to anyone associated with Bilzen, Sumberg [chapter 11 counsel for TradeWinds Airlines]…..At no time did I disclose the terms of the *Jet Star* settlement to the [TradeWinds Airlines] Chapter 7 trustee or persons associated with him….")).)

43. In every Answer filed by Soros in the Tradewinds Veil Piercing Action after entry of the Judge Keenan's 5/12/09 Opinion & Order, Soros asserted Grayson's alleged breach of her confidentiality obligations under the Jet Star Settlement Agreement as an affirmative defense to TradeWinds Airlines' claims.

> (**Defendants' Dec., Ex. 13** (Soros Answer to TradeWinds Airlines Second Amended Complaint ¶34), **Ex. 16** (Soros Answer to TradeWinds Airlines Third Amended Complaint ¶38).)

44. In every Answer filed by Chatterjee in the Tradewinds Veil Piercing Action after entry of Judge Keenan's 5/12/09 Opinion & Order, Chatterjee asserted Grayson's alleged breach of her confidentiality obligations under the Jet Star Settlement Agreement as an affirmative defense to TradeWinds Airlines' claims.

> (**Defendants' Dec. Ex. 14** (Chatterjee Answer to TradeWinds Airlines Second Amended Complaint. Ninth Affirmative Defense at 5), **Ex. 17** (Chatterjee Answer to TradeWinds Airlines Third Amended Complaint, Eleventh Affirmative Defense at 6).)

45. In every Answer filed by Soros in the Coreolis Veil Action after entry Judge Keenan's 5/12/09 Opinion & Order, Soros asserted Grayson's alleged breach of her confidentiality obligations under the Jet Star Settlement Agreement as an affirmative defense to Coreolis' claims.

> (**Defendants' Dec. Ex. 19** (Soros Answer to Coreolis ¶36), **Ex. 20** (Soros Amended Answer to Coreolis Complaint ¶36), **Ex. 23** (Soros Answer to Coreolis First Amended Complaint ¶40).)

46. In every Answer filed by Chatterjee in the Coreolis Veil Action after entry of Judge Keenan's 5/12/09 Opinion & Order, Chatterjee asserted Grayson's alleged breach of her confidentiality obligations under the Jet Star Settlement Agreement as an affirmative defense to Coreolis' claims.

> (**Defendants' Dec. Ex. 21** (Chatterjee Answer to Coreolis Complaint, Ninth Affirmative Defense at 6), **Ex. 24** (Chatterjee Answer to Coreolis Amended Complaint, Eleventh Affirmative Defense at 7).)

**The Joint Prosecution, Common Interest and Confidentiality Agreement:**

47. Coreolis and TradeWinds Airlines, through their respective attorneys, entered into a Joint Prosecution, Common Interest and Confidentiality Agreement to pursue their separate but common interests in responding to the various legal issues raised or which may be raised during the prosecution of the consolidated Coreolis Veil Piercing Action and TradeWinds Veil Piercing Action.

> (**Defendants' Dec. Ex. 29** (Joint Prosecution, Common Interest and Confidentiality Agreement at 1 ("[T]he Parties wish to continue to pursue their separate but common interests in responding to the various legal issues raised or which may be raised during the course of the Veil Piecing Actions and avoid any claim or suggestion of waive of privileges enjoyed by the Parties. To further these common legal interests, the Parties wish to engage in a joint or common interest effort any avoid any suggestion of waiver of privilege enjoyed by the Parties. ....We consider that matters of common concern, information, and litigation strategy are essential to the effective representation of our respective clients on these matters of separate but common interest.")), **Defendants' Dec. Ex. 41** (Bankruptcy Court Order of 12/21/15 at 6 n.2 ("All parties to the Joint Prosecution Agreement continue to be bound by the terms thereof, including Grayson, the Trustee, Coreolis and their respective attorneys.").)

48. Coreolis and TradeWinds Airlines had a common interest in preserving their respective veil piercing claims against the pending affirmative defenses asserted by Soros and Chatterjee, including the affirmative defenses that were expressly based on Grayson's alleged breach of her obligations under the Jet Star Settlement Agreement.

> (**Defendants' Dec. Ex. 6** (Mayer Dec. ¶4 ("TradeWinds Airlines and Coreolis had a common interest in prosecuting their respective claims and defending against the common and virtually identical affirmative defenses raised by defendants."), **Ex. 7** (Ressler Dec. ¶12 ("The TradeWinds Veil Piercing Case and the Coreolis Veil Piercing Case were procedurally consolidated. TradeWinds Airlines and Coreolis had a common interest in prosecuting their respective claims and defending against these affirmative defenses in the consolidated veil piercing actions."), **Ex. 8** (Werther Dec. ¶12), **Ex. 29** (Joint Prosecution, Common Interest and Confidentiality Agreement.).)

**The August 15, 2013 Meeting:**

49. The August 15, 2013 Meeting was held at the offices of Ressler & Ressler among Bruce Ressler and Ellen Werther, as counsel for Coreolis, and Robert Mayer, as counsel for the Trustee for TradeWinds Airlines.

> (**Defendants' Dec. Ex. 6** (Mayer Dec. ¶7), **Ex. 7** (Ressler Dec. ¶4), **Ex. 8** (Werther Dec. ¶4).)

50. Grayson did not attend the August 15, 2013 Meeting.

> (**Defendants' Dec. Ex. 6** (Mayer Dec. ¶7), **Ex. 7** (Ressler Dec. ¶¶4, 9), **Ex. 8** (Werther Declaration ¶¶4, 9).)

51. The August 15, 2013 Meeting was attended by Robert Mayer, Bruce Ressler and Ellen Werther—and no one else.

> (**Defendants' Dec. Ex. 6** (Mayer Dec. ¶7 ("The attendees at the Afternoon Meeting at Ressler & Ressler were myself, Bruce Ressler and Ellen Werther. No one else was present."), **Ex.** 7 (Ressler Dec. ¶4 ("The sole attendees at the August 15, 2013 Meeting were Mr. Mayer, Ellen Werther and myself. Grayson did not attend."), **Ex. 8** (Werther Dec. ¶4).)

52. The discussions among Robert Mayer, Bruce Ressler and Ellen Werther at the August 15, 2015 Meeting were undertaken pursuant to the confidentiality provisions of the Joint Prosecution, Common Interest and Confidentiality Agreement.

> (**Defendants' Dec. Ex. 6** (Mayer Dec. ¶8 ("At the commencement of that Afternoon Meeting I made it clear to Bruce Ressler and Ellen Werther that in my opinion the discussions would be covered by the Joint Prosecution Agreement which the parties to the lawsuit had previously executed. They concurred and agreed."), **Ex. 7** (Ressler Dec.¶5 ("At the commencement of the August 15, 2015 Meeting, Mr. Mayer, Ms. Werther, and I made it clear that the discussions would be covered by the Joint Prosecution Agreement."), **Ex. 8** (Werther Dec. ¶5).)

53. In their sworn declarations, Robert Mayer, Ellen Werther and Bruce Ressler, affirm that, at no time during the August 15, 2013 Meeting did Ellen Werther or Bruce Ressler state, in sum or substance, that "Grayson was violating rules of professional ethics and conduct by representing a client, TradeWinds Airlines, with whom she had a conflict of interest," or that "Grayson was violating rules of professional ethics and conduct by representing a client, TradeWinds Airlines, with whom she had a conflict of interest."

> (**Defendants' Dec. Ex. 6** (Mayer Dec. ¶11), **Ex. 7** (Ressler Dec. ¶6), **Ex. 8** (Werther Dec. ¶6).)

54. In their sworn declarations, Robert Mayer, Ellen Werther and Bruce Ressler affirm that, at no time during the August 15, 2013 Meeting, did Ellen Werther or Bruce Ressler state, in sum or substance, that "because of this conflict of interest, Grayson could not handle documents or taking a leading role at depositions, and therefore could not effectively serve her client," or that "Grayson could not take a leading role in depositions, or handle documents at depositions, because of a conflict of interest."

> (**Defendants' Dec. Ex. 6** (Mayer Dec. ¶12), **Ex. 7** (Ressler Dec. ¶7), **Ex. 8** (Werther Dec. ¶7).)

55. In their sworn declarations, Robert Mayer, Ellen Werther and Bruce Ressler affirm that, at no time during the August 15, 2013 Meeting did Ellen Werther or Bruce Ressler state, in sum or substance, that "Grayson did not do her fair share of work on the veil piercing cases and, in this way neglected her client," or that "Grayson had, unprofessionally, failed and neglected to shoulder her responsibilities by doing her fair share of the work in the coordinated veil piercing cases, and instead left the Ressler firm to do the lion's share of the work."

> (**Defendants' Dec. Ex. 6** (Mayer Dec. ¶13), **Ex. 7** (Ressler Dec. ¶8), **Ex. 8** (Werther Dec. ¶8).)

56. Robert Mayer, Ellen Werther and Bruce Ressler are the only witnesses to the August 15, 2013 Meeting, with personal knowledge of what was said at that meeting.

> (**Defendants' Dec. Ex. 6** (Mayer Dec. ¶7 ("The attendees at the Afternoon Meeting at Ressler & Ressler were myself, Bruce Ressler and Ellen Werther. No one else was present."), **Ex. 7** (Ressler Dec. ¶ 4 ("The sole attendees at the August 15, 2013 Meeting were Mr. Mayer, Ellen Werther and myself. Grayson did not attend."), **Ex. 8** (Werther Dec. ¶ 9 ("Indeed, the August 15, 2013 Meeting was attended by me, Mr. Ressler and Mr. Mayer—and no one else."))).)

57. At no time during the August 15, 2013 Meeting, did Ellen Werther or Bruce Ressler state, in sum or substance that "Grayson was violating rules of professional ethics and conduct by representing a client, TradeWinds Airlines, with whom she had a conflict of interest," or that "Grayson was violating rules of professional ethics and conduct by representing a client, TradeWinds Airlines, with whom she had a conflict of interest."

> (**Defendants' Dec. Ex. 6** (Mayer Dec. ¶11), **Ex. 7** (Ressler Dec.¶6), **Ex. 8** (Werther Dec. ¶6).)

58. At no time during the August 15, 2013 Meeting, did Ellen Werther or Bruce Ressler state, in sum or substance that "because of this conflict of interest, Grayson could not handle documents or taking a leading role at depositions, and therefore could not effectively serve

her client," or that "Grayson could not take a leading role in depositions, or handle documents at depositions, because of a conflict of interest."

(**Defendants' Dec. Ex. 6** (Mayer Dec. ¶12), **Ex. 7** (Ressler Dec. 7 ¶7), **Ex. 8** (Werther Dec. ¶7).)

59. At no time during the August 15, 2013 Meeting, did Ellen Werther or Bruce Ressler state, in sum or substance that "Grayson did not do her fair share of work on the veil piercing cases and, in this way neglected her client," or that "Grayson had, unprofessionally, failed and neglected to shoulder her responsibilities by doing her fair share of the work in the coordinated veil piercing cases, and instead left the Ressler firm to do the lion's share of the work."

(**Defendants' Dec. Ex. 6** (Mayer Dec. ¶13), **Ex. 7** (Ressler Dec. ¶8), **Ex. 8** (Werther Dec. ¶8).)

**The Tradewinds Bankruptcy Case:**

60. TradeWinds Airlines is a chapter 7 debtor in a bankruptcy case filed in United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court"), *In re Tradewinds Airlines, Inc.*, No. 08-20394-BKC-AJC (S.D. Fla.) ("TradeWinds Bankruptcy Case").

(Defendants' Dec. **Ex. 5** (Answer ¶¶14, 17).)

61. Coreolis is a creditor of the TradeWinds Airlines bankruptcy estate and a party in interest in the TradeWinds Airlines Bankruptcy Case.

(**Defendants' Dec. Ex. 30** (Coreolis Proof of Claim filed in the TradeWinds Bankruptcy Case on 11/4/8, Claim No. 147-1), **Ex. 31** (Coreolis First Amended Proof of Claim filed in the TradeWinds Bankruptcy case on 3/9/09, Claim No. 147-2), **Ex. 32** (Agreed Order entered in the TradeWinds Bankruptcy Case on 6/3/09 concerning the Coreolis Claims No. 147-1 and 147-2), **Ex. 33** (Coreolis Notice of Partial Withdrawal of Proof of Claim filed in the TradeWinds Bankruptcy Case on 6/16/09, "For avoidance of doubt, that portion of the Proof of Claim asserting [$8

> million]claims against the estate on account of the failure to pay for use of Coreolis' net operating losses and the failure to turn over Coreolis' books and records is <u>not</u> withdrawn.") .)

62. Coreolis has filed a proof of claim in the TradeWinds Bankruptcy Case asserting an unsecured claim against the TradeWinds Airlines' estate of approximately $8 million on account of a tax dispute between Coreolis and TradeWinds Airlines.

> (**Defendants' Dec. Ex.** 30 (Coreolis Proof of Claim filed in the TradeWinds Bankruptcy Case on 11/4/8, Claim No. 147-1), **Ex. 31** (Coreolis First Amended Proof of Claim filed in the TradeWinds Bankruptcy case on 3/9/09, Claim No. 147-2), **Ex. 32** (Agreed Order entered in the TradeWinds Bankruptcy Case on 6/3/09 concerning the Coreolis Claims No. 147-1 and 147-2), **Ex. 33** (Coreolis Notice of Partial Withdrawal of Proof of Claim filed in the TradeWinds Bankruptcy Case on 6/16/09, "For avoidance of doubt, that portion of the Proof of Claim asserting [$8 million]claims against the estate on account of the failure to pay for use of Coreolis' net operating losses and the failure to turn over Coreolis' books and records is <u>not</u> withdrawn.") .)

**Litigation in the Bankruptcy Court over Grayson's Potential Adverse Interest to the TradeWinds Estate:**

63. Coreolis filed an Objection in the Bankruptcy Court, dated November 26, 2008 (the November 2008 Objection"), to the Trustee's Application to the Bankruptcy Court for approval to retain Grayson as special litigation counsel pursuant to 11 U.S.C. §327(e) and approval of special litigation counsel's contingency fee arrangement pursuant to 11 U.S.C. §328.

> (**Defendants' Dec. Ex. 34** (Coreolis Objection, filed in the TradeWinds Bankruptcy Case on 11/26/08).)

64. Coreolis filed a Supplemental Objection in the Bankruptcy Court, dated December 15, 2008 (the "December 2008 Supplemental Objection"), to the Trustee's Application to the Bankruptcy Court for approval to retain Grayson as special litigation counsel pursuant to 11 U.S.C. §327(e) and approval of special litigation counsel's contingency fee arrangement pursuant to 11 U.S.C. §328.

(**Defendants' Dec. Ex. 35** (Coreolis Supplemental Objection filed in the Bankruptcy Court on 12/15/08).)

65. Coreolis alleged in the November 2008 Objection and in the December 2008 Supplemental Objection that Grayson had an undisclosed adverse interest to the TradeWinds Airlines estate in derogation of 11 U.S.C. §327.

(**Defendants' Dec. Ex. 34** (Coreolis Objection, filed in the TradeWinds Bankruptcy Case on 11/28/08), **Ex. 35** (Coreolis Supplemental Objection filed in the Bankruptcy Court on 12/15/08).)

66. As an exhibit to the November 2008 Objection, Coreolis submitted a letter from Grayson to United States District Judge Baer, dated October 1, 2008, in which Grayson responds to Soros' contention that she should be held in contempt.

(**Defendants' Dec. Ex. 34** (Grayson's letter to Judge Bear dated 10/1/08 responding to Soros's contention that she should be held in contempt, attached as Exhibit A to the November 2008 Objection).)

67. In the December 2008 Supplemental Objection, Coreolis alleged that Grayson held an adverse interest to the TradeWinds Airlines estate.

(**Defendants' Dec. Ex. 35** (December 2008 Supplemental Objection ("Mr. Soros has asserted in the NY Litigation that Ms. Grayson may be subject to a motion to contempt as a result of a breach of confidentiality agreements that were So Ordered by the District Court for the Southern District of New York in another matter against C-S Aviation. Mr. Soros has argued that Ms. Grayson has also breached a court-approved settlement agreement in that action by disclosures made by her on behalf of Tradewinds. Mr. Soros has also argued that Ms. Grayson has already breached the confidentiality order and settlement agreement because of disclosures made by her on behalf of Tradewinds in the NY Litigation, giving rise to a potential motion for contempt against Ms. Grayson and damages against Tradewinds.....If such a motion for contempt were entered, Ms. Grayson would be ineligible to prosecute the NY Litigation. Moreover, the mere possibility that Ms. Grayson may be using confidential and protected information gained n the previous litigation against C-S Aviation in this case constitutes an actual or potential conflict of interest with the estate, because the estate may be exposed to claims for damages arising as a result of Tradewinds' use of such information in the NY Litigation.... Accordingly, for that reason alone, Ms. Grayson holds an interest adverse to the estate and the Application should therefore be denied.")).).

68. On January 7, 2009, the Bankruptcy Court authorized the Trustee for TradeWinds Airlines to retain Grayson as special litigation counsel to prosecute the TradeWinds Veil Piercing Action, noting on the record that no final determination as to Grayson's disinterestedness would be made until the end of the case.

(**Defendants' Dec. Ex. 43** (Order dated January 7, 2009 (authorizing the Trustee to retain Grayson as "special litigation counsel for the trustee, on a contingency basis, as described in the Application, pursuant to 11 U.S. C. §§327 and 328, and as amended on the record at the hearing."); **Ex. 44** (Transcript of hearing held in the Bankruptcy Court on January 7, 2009, Tr. 34:18-23 (The Court: "If [Grayson] were engaged and it turned out somewhere down the line that it was determined that [she was] not disinterested, then [she may] be barred from collecting a fee. So that is a risk that [she] need[s] to be aware of if [she's] going forward in this matter…."); **Ex. 36** (Letter of Engagement of Special Litigation Counsel by the Trustee for TradeWinds Airlines, dated 2/3/09, filed with the Bankruptcy Court on 2/24/09).)

69. On January 10, 2014, Coreolis filed an Objection in the Bankruptcy Court opposing Grayson's Motion for Discovery and an Evidentiary Hearing on the Question of Whether She Was Terminated as Special Litigation Counsel Without Cause (the "Grayson Discovery Motion"), in which Coreolis advised the Bankruptcy Court that Soros and Chatterjee had asserted affirmative defenses attacking the TradeWinds veil piercing claim based on Grayson's alleged breach of her confidentiality obligations under the Jet Star Settlement Agreement (the "January 2014 Objection").

(**Defendants' Dec. Ex. 37** (Coreolis 2014 Objection ("Of concern, the New York Defendants have used Ms. Grayson to attack the TradeWinds veil-piercing claim in the New York Litigation, arguing that the claim is tainted by Ms. Grayson's improper conduct and is barred on that basis. *See* Opinion & Order issued in the TradeWinds New York Action on May 12, 2009. Both of the New York Defendants now assert the Affirmative Defense that:

The plaintiff's [TradeWinds'] claim is barred because it is based on information provided by its counsel [Grayson] in violation of a confidentiality order entered by the Court in the Jet Star Litigation and in violation of a settlement agreement entered into by plaintiff's counsel [Grayson] in connection with the Jet Star Litigation.

> While Coreolis and TradeWinds hotly dispute the merits of this Affirmative Defense, the New York Defendants continue to pursue this issue in the New York Litigation.")).)

70. As part of the 2014 Objection, Coreolis asserted that Grayson had an undisclosed, potential adverse interest to the TradeWinds bankruptcy estate arising from her prior involvement in the Jet Star Litigation, and her alleged breach of her confidentiality obligations under the Jet Star Settlement Agreement.

> (**Defendants' Dec. Ex. 37** (Coreolis 2014 Objection ("Further, it is a matter of public record in this Court that—inexplicably, indefensibly and in violation of her obligations under Bankruptcy Rule 2014 — Ms. Grayson *failed repeatedly in no less than* ***nine (9)*** *separate Declarations filed in this bankruptcy case to make full and complete disclosure* of the foregoing, including Judge Keenan's May 12, 2009 Opinion & Order and the Affirmative Defense which attacks the Tradewinds claim because of her alleged misconduct.
>
> As a result of these matters of public record, and the allegation of the affirmative defense, it appears that Ms. Grayson has held, and continues to hold, a potential interest adverse to the estate that disqualifies her from employment as special counsel under 11 U.S.C. §327(e) and deprives her of entitlement to any compensation for services previously rendered under 11 U.S.C. §328(c). As discussed above, none of these issues need be resolved until the New York Litigation is concluded. Indeed, as this Court has previously noted, there is no entitlement to compensation in any event unless and until the estate obtains a recover in the TradeWinds New York Action.")).)

71. By Order of January 28, 2014, the Bankruptcy Court deferred consideration of Grayson's potential adverse interest to the TradeWinds Airlines estate arising from her prior representation in the Jet Star Litigation and her obligations under the Jet Star Settlement Agreement.

> (**Defendants' Dec. Ex. 38** (January 28, 2014 Order).)

72. On July 22, 2016, Coreolis filed an Objection in the Bankruptcy Court to Grayson's Amended First Interim Application for Allowance and Payment of Compensation ("Grayson's Fee Application") (the "2016 Objection").

(**Defendants' Dec. Ex. 39** (Coreolis 2016 Objection).)

73. In the 2016 Objection, Coreolis asserted that Grayson had an undisclosed, potential adverse interest to the TradeWinds bankruptcy estate.

> (**Defendants' Dec. Ex. 39** (Coreolis 2016 Objection ("*Grayson's undisclosed agreement with Soros disqualifies her from any compensation from the Estate.* The Bankruptcy Rules are clear: professionals retained and paid by the Estate must disclose all "connections with the debtor, creditors, and any other party in interest…." Fed. R. Bankr. P. 2014. This obligation cannot be waived and the failure to comply precludes the payment of any fees from the Estate. Full disclosure is integral to the integrity of the bankruptcy process, and an essential prophylactic measure to protect the Estate. *In re Jennings*, 199 F. App'x 845, 848 (11th Cir. 2006)."
>
> "[fn] Coreolis has previously raised the issue of whether Grayson holds a potential interest adverse to the estate that disqualifies her from employment as special counsel under Section 327(e) and deprives her of compensation for services previously rendered under Section 328 (c). In that objection, Coreolis has identified Grayson's serial failure to make full disclosure in derogation of Bankruptcy Rule 2014. *See* D.E. #666, which is incorporated herein by reference as though set forth in full."
>
> ***
>
> "Notwithstanding these strict statutory obligations, Grayson failed to disclose that, at all relevant times, she held a potential interest adverse to the estate that disqualifies her from employment as special counsel under 11 U.S.C. §327(e) and deprives her of entitlement to any compensation for services previously rendered under 11 U.S.C. §328(c). Specifically, Grayson knew, but did not disclose, that she had entered into a confidential settlement agreement with George Soros that strictly precluded her from disclosing to any person the nature and basis of the veil piercing claims asserted against Mr. Soros in the *Jet Star* case. Notwithstanding that confidential agreement, Grayson touted her "prior unique experience" in the *Jet Star* case as a reason she should be retained as Special Counsel, without disclosing the confidential agreement with Soros that strictly limited her use of that prior experience. (Grayson Dec. D.E. #84)"
>
> "The broad restrictions imposed on Grayson by her confidential agreement with Soros first came to light *after* she was retained when Soros moved to disqualify her from the N.Y veil piercing action. *Tradewinds Airlines, Inc. v. Soros*, No. 08 CIV. 5901 (S.D.N.Y. JFK). The motion to disqualify Grayson was litigated under seal before Judge Keenan who rendered his decision in May 2009. *Tradewinds Airlines, Inc. v. Soros,* No. 08 CIV. 5901 JFK, 2009 WL 1321695 (S.D.N.Y. May 12, 2009). Judge Keenan's decision described the breadth of the restrictions

imposed on Grayson under her agreement with Soros. Judge Keenan found that Grayson's agreement with Soros required her to keep confidential the nature and basis of the claims asserted against Soros in the *Jet Star* case and not to disclose that information to "any person or entity." *Tradewinds Airlines, Inc. v. Soros,* No. 2009 WL 1321695 at *2."

"Judge Keenan found that the original and amended complaint filed by Grayson on behalf of TradeWinds in the NY veil piercing action "plainly violates her confidentiality obligations under the Settlement Agreement." *Tradewinds Airlines, Inc. v. Soros*, 2009 WL 1321695 at *6. Judge Keenan also found that the statements made in Grayson's Declarations to the Bankruptcy Court, regarding the *Jet Star* case "appear to violate her obligation under the Settlement Agreement to keep the claim asserted in that case confidential." *Id.* at *7. Judge Keenan specifically noted that Grayson's breach of the Settlement Agreement could result in her personal liability to Soros, requiring her to disgorge all settlement funds she received in the *Jet Star* case. *Id.* at *10."

"Until Judge Keenan described the terms of the settlement agreement in his May 12, 2009 decision, the terms of the agreement and its restrictions on Grayson were known to Grayson and Soros—but not disclosed to this Court or the Trustee."

"It appears from the record that Grayson affirmatively misled the Court in her numerous Declarations—each time attesting that she had "no connection to the Debtor, its creditors, [or] any other party in interest" except as described therein—and each time failed to disclose her confidential agreement with Soros (the key defendant in the veil piercing action) that precluded her from disclosing the nature and basis of the *Jet Star* litigation to any person. (D.E. # 84, 229, and 236.) Instead, Grayson touted her prior experience in the *Jet Star* litigation as a reason for the Trustee to retain her, without disclosing the restrictions imposed on her by her *Jet Star* agreement with Soros. (D.E. #84 (Grayson Dec.¶17)) When Coreolis first alerted the Court to the fact that Soros was moving to hold Grayson accountable for breach of her confidential agreement (D.E. #235 ¶¶24-27), Grayson simply denied it. (D.E. #236 (Grayson Dec.¶6)). Thereafter, when Judge Keenan found that Grayson had breached her confidential agreement with Soros, subjecting her to personal liability to Soros, Grayson chose to keep this Court in the dark."

"Grayson's serial failure to make full disclosure required by Bankruptcy Rule 2014, standing alone, warrants denial of compensation and disgorgement of all sums previously paid. Her adverse interest to the estate arising from her connection to Soros under her confidential agreement, standing alone, warrants the same."')).)

74. Coreolis's 2016 Objection is pending in the Bankruptcy Court, and no determination of the issues raised therein, including issues regarding Grayson's adverse interest, has been rendered.

(**Defendants' Dec. Ex. 7** (Ressler Dec. ¶13), **Ex. 8** (Werther Dec. ¶13).)

**Litigation in the Bankruptcy Court over the Nature and Value of Grayson's Legal Services Rendered in the Veil Piercing Actions and the Adequacy of her Time Records:**

75. On July 25, 2016, the Trustee for TradeWinds Airlines filed an Objection to Grayson's Fee Application (the "Trustee's 2016 Objection"), based on, inter alia, the nature and value of Grayson's services, and the adequacy of Grayson's time records.

> (**Defendants' Dec. Ex. 40** (Trustee's 2016 Objection ("Grayson appears to claim in the Application that jointly prosecuting the NY Action actually increased her amount of her fees as a result of the back and forth communications with Coreolis' counsel. Yet Grayson urged the Trustee to enter a joint prosecution agreement with Coreolis and its counsel. From the correspondence received during Grayson's document turnover it is clear that the joint prosecution arrangement worked to her advantage. She no longer was a law firm of one person…..Grayson's legal services on behalf of estate were limited until June 2013 as a result of the stay imposed in the NY Action. Grayson was then "up to bat" after TD's work was completed and there was a non-appealable Judgment for her to pursue in the NY Action. Thereafter, she withdrew as counsel for the Trustee in early September 2013…. Grayson's time spent on the NY Action as reflected in the Application is simply incomprehensible; given the fact that there had been barely any discovery prior to her termination. Furthermore, no tangible benefit to the TradeWinds estate resulted from Grayson's services while she was special counsel…."
>
> "Counsel to the Trustee informed by TD [Tuggle Duggins] and Grayson that they should maintain contemporaneous time records. TD kept such records – Ms. Grayson apparently did not. Rather, following her termination as special litigation counsel to the Trustee Grayson asked TD [to send her their time records which they did (dating back to 2008) – because she had not kept them herself. A review of TD's time records and hers reflects duplication of services which Grayson should not be compensated for performing. Furthermore, Grayson's time entries d not include enough substance to evaluate the work performed resulting in assumptions and guesswork with respect to her services. As such, the Court should not award any fees for time entries that cannot be fully comprehended as written.

[fn] The Trustee is not contending that her failure to keep such records disqualifies her from any compensation, rather the argument is that the documentation and descriptions are so poor as to render any services non-compensable.")).)

76. The Trustee's 2016 Objection is pending in the Bankruptcy Court, and no determination of the issues raised therein, including issues regarding the nature and value of Grayson's services, and the sufficiency of her time records, has been rendered.

(**Defendants' Dec. Ex. 6** (Ressler Dec. ¶14), **Ex. 7** (Werther Dec. ¶14).)

**Grayson's Claims Against the Trustee and the Trustee's Professionals:**

77. In December 2015, the Bankruptcy Court held that Grayson violated the automatic stay under the Barton Doctrine by naming the Trustee and his professionals as defendants in the instant action without prior Bankruptcy Court approval.

(**Defendants' Dec. Ex. 41** (Bankruptcy Court Order of 12/21/15 at 2-3).)

78. In December 2015, based on the Bankruptcy Court's ruling, Grayson dismissed the Trustee and his professionals as defendants in the instant action.

(**Defendants' Dec. Ex. 41** (Bankruptcy Court Order of 12/21/15 at 2-3).)

79. In December 2015, the Bankruptcy Court also held that all parties to the Joint Prosecution Agreement continue to be bound by the terms thereof.

(**Defendants' Dec. Ex. 41** (Bankruptcy Court Order of 12/21/15 at 6 n.2 ("All parties to the Joint Prosecution Agreement continue to be bound by the terms thereof, including Grayson, the Trustee, Coreolis and their respective attorneys.").).

80. In May 2015, Grayson waived her claims against the Trustee and his professionals, including Robert Mayer, counsel for the Trustee.

(**Defendants' Dec. Ex. 42** (Settlement Agreement at ¶3 ("Ms. Grayson agrees that she shall not seek any recovery from the Trustee or any of his professionals for any matters related to TradeWinds or the New York Action.").)

Dated: New York, NY
December 20, 2017

RESSLER & RESSLER

By: ______________________
Bruce J. Ressler
Ellen R. Werther
48 Wall Street
New York, NY 10005
212-695-6446
*For Defendants Ressler & Ressler,*
*Ellen Werther and Bruce J. Ressler*