UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VIOLET ELIZABETH GRAYSON,

                Plaintiff,

-against-

RESSLER & RESSLER, ELLEN WERTHER, and BRUCE RESSLER,

                Defendants.

**OPINION AND ORDER**

15 Civ. 8740 (ER)

Ramos, D.J.:

Violet Elizabeth Grayson ("Grayson" or "Plaintiff") brings this action against Ressler & Ressler, a law firm, Ellen Werther ("Werther"), and Bruce Ressler ("Ressler") (together, "Defendants"). Before the Court is Defendants' motion to for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Doc. 144. For the reasons set forth below, Defendants' motion for summary judgment is GRANTED.

## I.    BACKGROUND[1]

This lawsuit centers on an August 15, 2013 meeting between Werther and Ressler and Robert Mayer ("Mayer"), counsel for the bankruptcy trustee for Grayson's client TradeWinds Airlines ("TW Airlines").[2] At that time, Werther and Ressler represented Coreolis Holdings ("Coreolis") and TradeWinds Holdings, Inc. ("TW Holdings") in a veil piercing suit against George Soros ("Soros") and Purnedu Chatterjee ("Chatterjee"), which was consolidated with TW Airlines' similar veil piercing suit.

---

[1] The Court assumes familiarity with the record and its prior opinion, which details the facts and procedural history of this case, and discusses here only those facts necessary for its disposition of the instant motion. *See Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501 (S.D.N.Y. 2017).

[2] In 2008, TW Airlines was filed for bankruptcy and is currently a Chapter 7 debtor. Defendants' Rule 56.1 Statement of Undisputed Material Facts ("Def.'s 56.1") (Doc. 147) ¶ 60; *see also* Declaration of Violet Elizabeth Grayson in Opposition to Defendants' Motion for Summary Judgment ("Grayson Decl.") (Doc. 155) ¶ 10.

The gravamen of Grayson's suit against Defendants is that at Werther and Ressler's private meeting with Mayer on August 13, 2015, one or both of them made the following defamatory comments about Grayson:

- Grayson was violating rules of professional ethics and conduct by representing [TW Airlines], with whom she had a conflict of interest;

- Because of her conflict of interest, Grayson could not handle documents or take a leading role in depositions; and

- Grayson did not do her fair share of work on the veil piercing cases.

*See* Am Compl. (Doc. 97) ¶ 83; *see Grayson*, 271 F. Supp. 3d at 514.

A. **Factual Background[3]**

1. **History of the Consolidated Action**

In 2005, Grayson represented Jet Star Airlines ("Jet Star") in a veil piercing action against Soros and Chaterjee as owners of C-S Aviation. *See* Declaration of Violet Elizabeth Grayson in Opposition to Defendants' Motion for Summary Judgment ("Grayson Decl.") ¶ 5. Ultimately, that case was resolved through a settlement and confidentiality agreement, which required the parties and counsel to keep confidential "the existence, provisions, and substance of this Agreement, and the claims for relief sought against Mr. Soros and/or Dr. Chatterjee and the bases or asserted bases therefore." Declaration of Bruce Ressler in Support of Defendants' Motion for Summary Judgment ("Ressler Decl.") (Doc. 146) Ex. 26 ("Keenan Op."), at 4–5. Years later, in 2008, TW Airlines secured a significant default judgment against C-S Aviation. Grayson Decl. ¶¶ 8–9. Grayson was retained to represent the trustee for TW Airlines in a veil piercing suit against Soros and Chatterjee and brought suit against them in this District in 2008.

---

[3] The following facts are drawn from Defendants' Rule 56.1 Statement of Undisputed Material Facts ("Def.'s 56.1") (Doc. 147), Plaintiff's Rule 56.1 Counter-Statement ("Pl.'s 56.1") (Doc. 156), Defendants'' Reply Statement of Material Facts ("Reply 56.1") (Doc. 159), and the parties' supporting submissions. Any citation to the parties' 56.1 Statements incorporates by reference the documents cited therein.

2

*Id.*; Defs.' 56.1 ¶ 14. In that action, Chatterjee and Soros each raised affirmative defenses relating to Grayson's earlier representation of Jet Star:

> Plaintiff's claim is barred because it is based on information provided to plaintiff by its counsel in violation of a confidentiality order entered by the Court in the Jet Star Litigation and in violation of a settlement agreement entered into by plaintiff's counsel in connection with the Jet Star Litigation.

Defs.' 56.1 ¶¶ 25–26. In 2009, Soros also moved to disqualify Grayson as TW Airlines' counsel based on her alleged breach of the Jet Star confidentiality order and settlement agreement. *Id.* ¶ 36. Judge Keenan, before whom the case was pending, denied the motion, finding that while in one respect Grayson "plainly violate[d] her confidentiality obligations," her actions did not "affect or taint" the TW Airlines litigation. *Id.* ¶ 37; *see also* Keenan Op. at 16–17.[4]

Coreolis and TW Holdings also made objections to Grayson's representation of TW Airlines in the Bankruptcy Court.[5] In late 2008, they objected to Grayson's appointment as special litigation counsel for TW Airlines. *Id.* ¶¶ 63–64. They alleged that Grayson held an adverse interest in the TW Airlines estate, arguing that "the mere possibility that Ms. Grayson may be using confidential and protected information gained in the [Jet Star] litigation against C-S Aviation in this case constitutes an actual or potential conflict of interest with the estate, because the estate may be exposed to claims for damages arising as a result of [TW Airline's] use of such information." *Id.* ¶¶ 65–67. On January 7, 2009, the Bankruptcy Court authorized Grayson's appointment as special litigation counsel, notwithstanding Coreolis' and TW Holdings' objection. *Id.* ¶ 68. The Bankruptcy Judge did, however, state on the record:

> We have a suggestion that the attorneys which the trustee in the trustee's business judgment wishes to engage may not be

---

[4] Grayson argues that Judge Keenan's opinion foreclosed Soros' and Chatterjee's affirmative defense; Defendants argue that the issue of Grayson's alleged conflict continued to be live throughout the pendency of the litigation and point to the fact that Soros and Chatterjee raised the affirmative defense in filings made after Judge Keenan's opinion. *See* Defs.' 56.1 ¶¶ 45–46, Pl.'s 56.1 ¶ 48; Reply 56.1 ¶ 48.

[5] Coreolis filed proof of claim against TW Airlines and therefore asserts that it is a party of interest in the bankruptcy proceeding. *Id.* ¶¶ 62–63.

3

> disinterested. If they were engaged and it turned out somewhere down the line that it was determined that they were not disinterested, then they might be barred from collecting a fee. So that is a risk that they probably need to be aware of it they're going forward with this matter . . . .

See Ressler Decl. Ex. 44 (Transcript of January 7, 2009 Hearing).

In 2010, Ressler & Ressler represented Coreolis and TW Holdings in a veil piercing action against Soros and Chatterjee. Defs.' 56.1 ¶ 13. At some point, both veil piercing actions were consolidated by Judge Keenan. *Id.* ¶ 15. Coreolis, TW Holdings, and TW Airlines entered into a joint prosecution agreement. *Id.* ¶ 47. The agreement allowed the three parties to pursue their common interests in responding to legal issues raised by Soros and Chatterjee. *Id.* ¶ 48.

According to Grayson, she did most of the work in the consolidated action, because she was more familiar with the facts, was an exceptional legal researcher and writer, and because Werther and Ressler were busy with a different case. Grayson Decl. ¶ 31. For example, she states that she assumed the lead at the deposition of C-S Aviation's first President, Bharat Bhise. *Id.* ¶ 34. In 2013, Werther informed Grayson that she wanted to hire her friend, Martin Bienenstock, to render an expert opinion on C-S Aviation's financial condition. *Id.* ¶ 37. Grayson did not think this was valuable, as she had obtained a declaration about C-S Aviation's insolvency in the Jet Star case. *Id.* ¶¶ 35, 37. Werther also asked Grayson to pay for half of Bienenstock's fee, and later pressed her to ask the trustee to fund the expenses. *Id.* ¶¶ 37, 39.

On August 10, 2013, Ressler and Werther stopped answering Grayson's emails and phone calls. *Id.* ¶ 43. Mayer also informed Grayson that he wanted to meet with her, Ressler, and Werther. *Id.* ¶ 44. Ultimately, however, Grayson met with Mayer alone before his separate meeting with Ressler and Werther. *Id.* ¶ 45.

### 2. August 2013 Meetings and Grayson's Discharge

On the morning of August 15, 2013, Mayer met with Grayson, who described the meeting as highly cordial. *Id.* ¶ 46.

4

That afternoon, Mayer met with Ressler and Werther. Defs.' 56.1 ¶ 49. No one else was in attendance. *Id.* ¶¶ 50–51. At the beginning of the meeting, Mayer explained his view that the discussions in the meeting would be covered by the joint prosecution agreement. *Id.* ¶ 52. Ressler and Werther agreed. *Id.* Mayer, Ressler, and Werther each filed sworn declarations affirming that during that meeting, neither Ressler nor Werther made the defamatory statements Grayson accused them of making in her Complaint. *See id.* ¶¶ 53–55.

Specifically, each declarant affirmed that neither Werther nor Ressler stated: (1) "Grayson was violating rules of professional ethics and conduct by representing a client, TradeWinds Airlines, with whom she had a conflict of interest;" (2) "Grayson was representing TradeWinds Airlines subject to a conflict of interest, and so was violating her ethical obligations as an attorney;" (3) "Because of this conflict of interest, Grayson could not handle documents or taking a leading role at depositions, and therefore could not effectively serve her client;" (4) "Grayson could not take a leading role in depositions, or handle documents at depositions, because of a conflict of interest;" (5) "Grayson had, unprofessionally, failed and neglected to shoulder her responsibilities by doing her fair share of work in he coordinated veil piercing cases and instead left the Ressler firm to do the lion's share of the work;" or (6) "Grayson did not do her fair share of work on the veil piercing cases and, in this way neglected her client." *Id.*; *see also* Ressler Decl. Ex. 6 (Declaration of Robert Mayer) ¶¶ 11–13, Ex. 7 (Declaration of Bruce Ressler) ¶¶ 6–8, Ex. 8 (Declaration of Ellen Werther) ¶¶ 6–8.[6]

Four days later, on August 19, 2013, the trustee send Grayson an email terminating her as special litigation counsel for TW Airlines. Grayson Decl. ¶ 51. Grayson urged the Bankruptcy Court to overrule the trustee's decision, but after the Bankruptcy Judge indicated that he would defer to the trustee, she did not renew her application. *Id.* ¶ 53. When Grayson filed an

---

[6] Grayson argues that this is untrue. According to her, Mayer called her the evening of the meeting and informed her that Werther and Ressler did make those statements. *Id.* ¶ 47.

application to withdraw in the consolidated action, Magistrate Judge Andrew Peck asked Mayer why there was a last minute substitution of counsel. *Id.* ¶ 54. Mayer responded that the trustee had a concern about Grayson's ability to "handle the burdens of this case . . . and to meet her obligations under the retainer agreement." *Id.* Mayer stated that the concerns had been raised "perhaps ten days" before the trustee gave notice of Grayson's dismissal, which was approximately the same time as Mayer's meeting with Werther and Ressler. *Id.*

After Grayson was discharged from her representation of TW Airlines, she moved for discovery and an evidentiary hearing before the Bankruptcy Court to determine whether she was terminated without cause. Defs.' 56.1 ¶ 69. Coreolis and TW Holdings filed an objection and pointed out that in the consolidated action, Soros and Chatterjee had raised affirmative defenses based on Grayson's alleged breach of the Jet Star confidentiality order and settlement agreement. *Id.* They also raised their earlier objection that Grayson had an undisclosed, potentially adverse interest to TW Airlines based the same alleged breach. *Id.* ¶ 70. In response, the Bankruptcy Court ordered that Grayson could seek discovery from the trustee and did not express any opinion on the arguments regarding Grayson's alleged conflict. *Id.* ¶ 71; *see* Ressler Decl. Ex. 38.

In 2016, Grayson filed an application for allowance and payment of compensation. Defs.' 56.1 ¶ 72. Coreolis and TW Holdings objected and again asserted that Grayson had an undisclosed, potentially adverse interest to TW Airlines. *Id.* ¶¶ 72–73. That objection remains pending in the Bankruptcy Court. *Id.* ¶ 74. Later in 2016, the trustee filed an objection to Grayson's fee application based on the nature and value of Grayson's services as well as the adequacy of her time records. *Id.* ¶ 75. That objection also remains pending. *Id.* ¶ 76.

B.  **Procedural History**

On August 14, 2015, Plaintiff commenced this action in the Supreme Court of the State of New York, County of New York against Defendants via summons and notice. Doc. 1 ¶ 4. On November 6, 2015, the action was removed to this Court. *See id. generally*. From November 11, 2015 to February 24, 2016, the instant action was stayed pending the Florida bankruptcy court's decision on Defendants' emergency motion to compel Plaintiff to voluntarily dismiss the instant action. Docs. 11, 24. When the Court lifted the stay, it also granted Plaintiff leave to file a complaint that included a federal cause of action. Doc. 24.

On April 29, 2016, Plaintiff filed the Complaint that included a federal cause of action[7] against Defendants as well as Coreolis, Orchard Capital Corporation, TW Holdings, and Richard Ressler. Doc. 26. On March 30, 2017, Defendants filed their first motion to dismiss the Complaint. Doc. 84.

On April 21, 2017, in response to the motion to dismiss, Plaintiff filed the Amended Complaint, asserting the following ten causes of action against Defendants: (1) defamation; (2) injurious falsehood; (3) tortious interference with contract; (4) tortious interference with prospective business advantage; (5) breach of contract; (6) *quantum meruit*; (7) unjust enrichment; (8) conversion; (9) trespass to chattel; and (10) *prima facie* tort. Doc. 97.

On June 1, 2017, Defendants moved to dismiss the Amended Complaint in its entirety pursuant to Rule 12(b)(6). Doc. 121. On September 18, 2017, the Court granted Defendants' motion in part and denied it in part. Specifically, the Court dismissed all of Grayson's claims except her defamation claim with respect to three statements allegedly made at the August 15, 2013 meeting. *See Grayson*, 271 F. Supp. 3d at 527. The Court further determined that the topic

---

[7] The Complaint included a claim under the Fair Credit Reporting Act. Doc. 26 ¶ 62-64. Plaintiff voluntarily dismissed that claim on April 21, 2017. Doc. 97.

7

of the statements made at that meeting were of common interest to Defendants and Mayer, triggering the common interest privilege. *Id.* at 514–16.

## II.     LEGAL STANDARD

Summary judgment is only appropriate where the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, [and] other materials" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky,* 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Medical Center*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.,* 368 F.3d 123, 126 (2d Cir. 2004)). However, a motion for summary judgment cannot be defeated on the basis of conclusory assertions,

speculation, or unsupported alternative explanations of facts. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008); *see also Senno*, 812 F. Supp. 2d at 467 (citing *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir. 1998)). The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson*, 477 U.S. at 256–57).

Nonetheless, "summary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial. There must either be a lack of evidence in support of the plaintiff's position or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error." *Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 54 (2d Cir. 1998) (internal citations omitted).

### III. DISCUSSION

#### A. Publication

Under New York law, a cause of action for slander (that is, defamation made through oral statements as opposed to written ones) is actionable only if the statements were published (that is, spoken) to a third party. *See Albert v. Loksen*, 239 F.3d 256, 265–66 (2d Cir. 2001). Defendants argue that they are entitled to summary judgment because neither Ressler nor Werther uttered the alleged statements to Mayer. *See* Memorandum of Law in Support of Defendants' Summary Judgment Motion ("Defs.' Mem.") (Doc. 145), at 8–11.

When a party submits "affidavits from the only three persons present during the conversation, in which each unequivocally denies that the slanderous statement was made," that evidence constitutes "a prima facie showing of no publication" under New York law. *Snyder v. Sony Music Entm't, Inc.*, 684 N.Y.S.2d 235, 238 (1999). Defendants have done just that, and put

forward affidavits from Werther, Ressler, and Mayer unequivocally swearing that the allegedly slanderous statements were not uttered on August 15, 2013. *See* Defs.' 56.1 ¶¶ 53–55.[8] According to Grayson, Mayer informed her that evening that Defendants did make those statements, creating an issue of material fact precluding summary judgment. *See* Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Mem.") (Doc. 154), at 14. Grayson argues that his statements are not inadmissible hearsay because they are "prior inconsistent statement[s] impeaching Mayer's [summary judgment] declarations." *Id.* Even if Mayer's previous statements could be used to impeach his credibility, they could not be used as proof that slanderous statements *were* made on August 15, 2013. Therefore, Grayson's affidavit does not refute the declarations from Werther and Ressler swearing that those statements were never made, and cannot rebut Defendants' prima facie showing of non-publication. *See Albert*, 239 F.3d at 266 ("When challenged on a motion for summary judgment, a plaintiff may not rely solely on hearsay or conclusory allegations that the slanderous statement was made."); *see also Deutsch Asset Mgmt., Inc. v. Callaghan*, No. 01 Civ. 4426 (CBM), 2004 WL 758303, at *13 (S.D.N.Y. Apr. 7, 2004) (same).

B.  **Rule 56(f) Motion**

Grayson argues that, at the very least, the Court should refrain from entertaining Defendants' summary judgment motion until she is able to seek discovery from Defendants. *See* Pl.'s Mem. at 4–8. "Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000). Rule 56(f) allows a nonmoving party to file an affidavit requesting the opportunity "to discover information that is essential to [her]

---

[8] Grayson argues in her 56.1 Statement (but not in her memorandum of law) that Mayer's statement to her on the evening of August 15, 2013 about what was said at the meeting creates an issue of material fact precluding summary judgment. *See* Pl.'s 56.1 ¶¶ 53–55. However, Mayer's statements to Grayson are out of court statements being offered for the truth of the matter and are therefore inadmissible hearsay.

10

opposition" before a court rules on the moving party's summary judgment motion. *Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)). A 56(f) affidavit must show: "(1) what facts are sought [to resist the motion] and how they are to be obtained; (2) how those facts are reasonably expected to create a genuine issue of material fact; (3) what effort affiant has made to obtain them; and (4) why the affiant was unsuccessful in those efforts." *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303 (2d Cir. 2003) (quoting *Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999)).

Grayson's Rule 56(f) affidavit is almost entirely devoid of specifics. She states that she seeks: "(a) additional admissible evidence that Defendants actually uttered the defamatory statements alleged in the First Amended Complaint at their meeting with Robert Mayer on August 15, 2013; (b) additional evidence that Defendants uttered these defamatory statements with knowledge of their falsity or reckless disregard for their truth or falsity; [and] (c) additional evidence that Defendants uttered these defamatory statements with common law malice in the sense of ill will." Grayson Decl. ¶ 102. Grayson has done no more than restate certain elements of a cause of action for slander. *See Albert*, 239 F.3d at 265–66 (slander requires a statement "published to a third party . . . made with the applicable level of fault on the part of the speaker . . . and not protected by privilege" (internal citations and quotation marks omitted)). A party's Rule 56(f) affidavit should be denied where it is written "in such general terms that [s]he failed to explain with any specificity 'how the facts sought are reasonably expected to create a genuine issue of material fact'" and failed "to explain [her] basis for believing that these documents exist." *Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 151–52 (2d Cir. 2016) (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994).

Grayson also states that she is "particularly interested in obtaining Mayer's contemporaneous notes of the August 15, 2013 meeting and any memoranda or e-mails (authored

by any person) describing or discussing what transpired at the meeting." Grayson Decl. ¶ 104. Defendants raise three arguments in response.

First, they argue that this evidence would be inadmissible hearsay. *See* Reply Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Reply Mem.") (Doc. 157), at 3–4. The Court disagrees. If Mayer did take contemporaneous notes (although there is nothing in the record to suggest that he did), such statements may qualify under the present sense impression exception to the hearsay rule. *See* Fed. R. Evid. 803(1). And while non-contemporaneous memoranda or e-mails authored by Mayer would be inadmissible hearsay, and memoranda or emails authored by other non-parties could pose a double hearsay problem, if Grayson or Ressler authored memoranda or emails about the meeting, such evidence may be admissible non-hearsay under Rule 801(d)(2) of the Federal Rules of Evidence.

Second, Defendants argue that the existence of such evidence, even if admissible, is merely speculative and therefore cannot defeat—or delay—summary judgment. *See* Reply Mem. at 4, 9–10. A Rule 56(f) motion requires "something more than a fanciful allegation . . . to justify denying a motion for summary judgment when the moving party has met its burden of demonstrating the absence of any genuine issue of material fact." *Contemporary Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 107 (2d Cir. 1981).[9] District courts may refuse additional discovery if the request is "based on speculation as to what potentially could be discovered." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Stroh Cos.*, 265 F.3d 97, 117 (2d Cir. 2001); *see also Burgess v. Fairport Cent. Sch. Dist.*, 371 F. App'x 140, 142 (2d Cir. 2010) ("Appellants' request was based solely on conjecture and speculation. Appellants did not substantiate their

---

[9] The fact that Defendants have met their burden separates this case from those relied on by Grayson. In *Miller v. Wolpoff & Abramson*, for example, the Second Circuit found that the affidavits submitted by Defendants lacked sufficient detail to entitle them to judgment as a matter of law. *See* 321 F.3d at 305. Similarly, in *Meloff v. New York Life Insurance Co.*, the Second Circuit determined that there were "questions" regarding the defendant company's employment policies precluding the entry of summary judgment in an employment discrimination case. *See* 51 F.3d 372, 375 (2d Cir. 1995).

general belief that discovery would have produced facts relevant to their claims, and consequently, the district court did not abuse its discretion in denying the request."). Grayson's theory opposing summary judgment is that Defendants and Mayer are lying to the Court, and that, were she granted discovery, she could prove it. To compound on this point, Grayson spends much of her opposition attacking Mayer's credibility, arguing that he is hostile to her, has ample motivation to lie, and violated a confidentiality order in the Florida bankruptcy proceeding. Pl.'s Mem. at 9–15. Grayson's arguments do not move her Rule 56(f) affidavit out of the realm of speculation, as she does not put forward any admissible evidence suggesting that Mayer, Ressler, and Werther all lied in their affidavits. *See Chemical Bank v. Hartford Acc. & Indem. Co.*, 82 F.R.D. 376, 378 (S.D.N.Y. 1979) ("[A] naked attack upon the affidavits of a moving party is, without more, insufficient to place the credibility of the affiant in issue. Rather, Rule 56 expressly provides that the opposing party 'must set forth specific facts' demonstrating that there is a genuine triable issue concerning the credibility of the affiant.").

Third, Defendants argue that Grayson failed to diligently seek discovery from them, and therefore should be precluded from delaying summary judgment now. "Courts are particularly reluctant to allow additional discovery in the face of a summary judgment motion where the requests are 'put forth by parties who were dilatory in pursuing discovery.'" *Alali v. DeBara*, No. 07 Civ. 2916 (CS), 2008 WL 4700431, at *7 (S.D.N.Y. Oct. 24, 2008) (quoting *Paddington Partners*, 34 F.3d at 1139). Here, while the parties never entered into a discovery scheduling order, it is not the case that Grayson had no opportunity for discovery. The Court granted in part and denied in part Defendants' motion to dismiss in late September 2017. *See generally Ressler*, 271 F. Supp. 3d 501. Grayson has put forward no evidence that she attempted to depose witnesses or sought the production of evidence at that time. Instead, Grayson states that she waited two months, until after Defendants filed a pre-motion conference letter regarding the instant motion, and then requested merits discovery, which the Court denied. *See* Grayson Decl.

¶ 91. The Court disagrees with Grayson's interpretation of the November 2017 conference; at that time, Grayson repeatedly expressed her desire to commence merits discovery. *See* Doc. 142 at 9:14–11:2. The Court did not rule on Grayson's request to open discovery; in fact, it allowed Defendants to move forward with their motion for summary judgment with the understanding that Grayson would be able to file a Rule 56(f) affidavit if she could point to specific, admissible evidence she hoped to uncover through discovery. *Id.* at 7:12–19, 15:23–17:1. Grayson's situation, therefore is unlike that of the plaintiffs in *Miller v. Wolpoff & Abramson*, who actually attempted to depose defense witnesses but were met with resistance from defense counsel.

For these reasons, the Court finds that this is the rare case in which Defendants are entitled to summary judgment and Grayson is not entitled to seek additional merits discovery.

C. **Litigation Privilege**

Even if Grayson put forward admissible evidence that Defendants made the allegedly slanderous statements, the Court finds that summary judgment would still be appropriate, as the statements are covered by the litigation privilege.

"The law of New York for well over one hundred years has provided 'absolute immunity from liability for defamation'" for written statements made by attorneys in connection with a court proceeding, when those statements are "pertinent to the questions involved." *Yukos Capital S.A.R.L. v. Feldman*, No. 15 Civ. 4964, 2016 WL 4940200, at *4 (S.D.N.Y. Sep. 14, 2016) (quoting *Front, Inc. v. Khalil*, 24 N.Y.3d 713, 718 (2015)). The privilege "embraces anything that may possibly or plausibly be relevant or pertinent, with the barest rationality, divorced from any palpable or pragmatic degree of probability." *Id.* It applies to both in court and out of court statements. *Id.*

Grayson does not dispute this, but instead argues that the litigation privilege is limited to statements "made in good faith and without malice." Pl.'s Mem. at 19. This is not so. The Court of Appeals has made clear that "the privilege attaches to such statements irrespective of an

attorney's motive for making them." *Front*, 24 N.Y.3d at 718; *see also Stega v. N.Y. Downtown Hosp.*, -- N.E.3d --, 2018 WL 3129383, at *4 (N.Y. June 27, 2018) ("Absolute privilege . . . entirely immunizes an individual from liability in a defamation action, regardless of the declarant's motives . . . .").

Two of the allegedly defamatory statements are about Grayson's alleged conflict of interest in the veil piercing actions. *See* Defs.'s 56.1 ¶¶ 53–54. The third statement was more generally about Grayson's performance as co-counsel. *Id.* ¶ 55. The Court finds that all three of these statements are "possibly or plausibly . . . relevant or pertinent," because they affected the litigation strategy of the case, especially in light of Soros' and Chatterjee's affirmative defenses. *Id.* ¶¶ 25–26, 34–35.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to terminate the motion, Doc. 141, and close the case.

It is SO ORDERED.

Dated: July 27, 2018
New York, New York

Edgardo Ramos, U.S.D.J.